OPINION
{¶ 1} This appeal emanates from a judgment of the Lake County Court of Common Pleas, denying appellant's, John F. Ready Jr., motion to withdraw his guilty plea. For the following reasons, we affirm the decision of the lower court.
 {¶ 2} By way of background, on June 29, 1999, the Lake County Grand Jury secretly indicted appellant on the following charges: one count of engaging in a pattern of corrupt activity, a felony of the second degree, in violation of R.C. 2923.32; three counts of theft, felonies of the fifth degree, in violation of R.C. 2913.02; three counts of forgery, felonies of the fifth degree, in violation of R.C. 2913.31; and three counts of possession of a criminal tool, felonies of the fifth degree, in violation of R.C. 2923.24.
 {¶ 3} Eventually, the parties entered into a plea agreement whereby appellant would cooperate with the Lake County Narcotics Agency ("the LCNA") to arrange successful drug transactions in exchange for the state providing a favorable sentencing recommendation.[1]
 {¶ 4} As a result, on April 10, 2001, appellant withdrew his former plea of not guilty and entered a written plea of guilty to the following charges: one count of engaging in a pattern of corrupt activity, a felony of the second degree in violation of R.C. 2923.32; two counts of theft, felonies of the fifth degree, in violation of R.C.2913.02; and two counts of forgery, felonies of the fifth degree, in violation of R.C. 2913.31.
 {¶ 5} Upon application by the state, the trial court entered a nolle prosequi to the one count of theft, one count of forgery, and three counts of possession of a criminal tool. The trial court formally accepted appellant's plea through a judgment entry dated April 13, 2001. The sentencing hearing was delayed until May 29, 2001, apparently to provide appellant additional time to arrange the drug transactions.
 {¶ 6} However, prior to sentencing, appellant filed a motion to withdraw his guilty pleas on May 14, 2001, contending that the LCNA had failed to work with appellant in that "the circumstances and the schedule of the [LCNA] prevented [appellant] from completing the task given to him by the [agency]." For these reasons, appellant sought to withdraw his guilty pleas.[2]
 {¶ 7} An May 25, 2001, the state responded by arguing that the LCNA had made an effort to work with appellant. According to the state, appellant abandoned the attempt to make a controlled drug buy when he notified Special Agent 68 on May 9, 2001, that he was seeking to withdraw his plea. From this, the state concluded that appellant had simply "changed his mind as to his strategy on how he could limit his exposure to criminal sanctions[,]" which was insufficient justification to permit a withdraw of a presentence guilty plea.
 {¶ 8} An May 31, 2001, a hearing was held on appellant's motion to withdraw his guilty pleas where appellant presented the testimony of Lieutenant Edward J. Ebert ("Lieutenant Ebert") and Special Agent 68, also known as Jennifer. In addition, appellant testified on his own behalf.
 {¶ 9} Apparently, during his incarceration, appellant had been in contact with Lieutenant Ebert of the LCNA since February 2001 in an attempt to set up controlled drug transactions. To carry out this undercover narcotics operation, Special Agent 68 was to pose as appellant's wife or girlfriend when making the controlled purchases. The testimony indicated that everyone was aware of the difficulty in arranging these transactions because of appellant's incarceration. Specifically, appellant's sole role would be to try to telephonically arrange drug buys from jail through Special Agent 68.
 {¶ 10} According to Lieutenant Ebert and Special Agent 68, appellant initially cooperated with the LCNA in hopes that he would get a favorable sentencing recommendation. Prior to entering his guilty pleas, agents from the LCNA met with appellant on six separate occasions to arrange controlled drug transactions, to wit: March 15, 2001 for one and one-half hours; March 21, 2001 for one hour; March 30, 2001 for one hour and thereafter for three additional hours; April 2, 2001 for 48 minutes; and April 9, 2001 for over one hour. However, none of these meetings produced a successful drug buy.
 {¶ 11} Then, on April 10, 2001, appellant entered his guilty pleas, and the matter was scheduled for sentencing on May 29, 2001. On April 16, 2001, Lieutenant Ebert and Special Agent 68 met with appellant for over one hour to set up a controlled drug transaction. Although they came close to securing a successful drug buy on April 16, 2001, Lieutenant Ebert explained that the operation was called off due to safety concerns:
 {¶ 12} "*** It was a problem that logistics were wrong and it was a very dangerous situation, plus the individual [appellant's contact] did not have the drugs.
 {¶ 13} "***
 {¶ 14} "He wanted to take our female [Special Agent 68] at that time, who was posing as [appellant's] wife, to Cleveland to the St. Clair area, which was out of our jurisdiction. And we had no idea who he was buying from, he [appellant's contact] didn't have the stuff, things got a little bit crazy, so we decided to back off."
 {¶ 15} Even though the April 16, 2001 operation was unsuccessful, Lieutenant Ebert indicated that he was still willing to work with appellant. However, according to Lieutenant Ebert, the LCNA was unable to arrange another meeting with appellant until May 9, 2001 because Special Agent 68 was on medical leave.
 {¶ 16} When Special Agent 68 returned to work on May 9, 2001, she, along with Special Agent 78, went to the Lake County Jail to meet with appellant and attempt to set up another controlled drug transaction. Appellant, however, was unwilling to do so. According to Special Agent 68, appellant told her that he was seeking to withdraw his guilty pleas, and that he or his counsel would be in contact with her. At that point, Special Agent 68 informed appellant that she was still willing to work with him if he or his counsel contacted her. Special Agent 68 did not make arrangements to meet with appellant on May 14, 2001, because she expected to be contacted by him or his counsel. Appellant, however, never contacted Special Agent 68.
 {¶ 17} Thus, nearly three weeks before the sentencing hearing, appellant decided not to cooperate with the LCNA and instead sought to withdraw his guilty pleas. According to Lieutenant Ebert, three weeks was enough time for appellant to set up a controlled drug transaction.
 {¶ 18} At the motion hearing, appellant confirmed that he entered his guilty pleas on April 10, 2001, with the understanding that he would be working with the LCNA to arrange successful drug transactions in exchange for a favorable sentencing recommendation. In fact, appellant was aware that mere attempts to arrange drug transactions would not be considered. Rather, only successful drug transactions would result in a favorable sentencing recommendation.
 {¶ 19} Furthermore, according to appellant, he was under the impression that after he entered his guilty pleas, the LCNA agents would increase their visits with him to several days in a row in order to arrange the controlled drug transactions:
 {¶ 20} "*** [U]ltimately it was decided I was going to work with Lake County [the LCNA].
 {¶ 21} "And what had happened at that point is we kept postponing my trial and Lake County [the LCNA] was coming up, if you look at the dates on them, with the exception of two, it's pretty much a weekly basis, every seven to ten days.
 {¶ 22} "And at the point in April when we came here to plea, we understood that wasn't good enough. I couldn't show up, hang out with them for 45 minutes every ten days, and try to make a phone call because of the situation. If I could not get a hold of that individual or they happen to not be home that particular week at that particular hour, then it was all for naught.
 {¶ 23} "So at this point when we decided to do this plea, the agreement was as far as making more of an effort, more of an effort as far as mine and your understanding was, you know, show up a couple days in a row and let's try to get this thing done at different hours because of the situation of me being incarcerated."
 {¶ 24} These increased visits by the LCNA never occurred. Instead, after appellant entered his guilty pleas on April 10, 2001, the agents from the LCNA met with him on two separate occasions, to wit: April 16, 2001, and May 9, 2001.
 {¶ 25} As mentioned earlier, the April 16, 2001 meeting did not result in a successful drug transaction. However, according to appellant, he was supposed to call his contact back the next day, but none of the LCNA agents showed up to help him do so.
 {¶ 26} Appellant also confirmed that on May 9, 2001, he advised Special Agent 68 that he would no longer attempt to set up drug transactions because he was seeking to withdraw his guilty pleas. According to appellant, at the May 9, 2001 meeting, Special Agent 68 explained that she was unable to meet with him since April 16, 2001, because she was on vacation, and that staffing problems prevented Lieutenant Ebert from meeting with appellant. In contrast, Lieutenant Ebert testified that Special Agent 68 was unable to meet with appellant until May 9, 2001, as she was on medical leave.
 {¶ 27} Furthermore, in direct conflict with Special Agent 68's testimony, appellant claimed that Special Agent 68 arranged to meet with him on May 14, 2001, so he could advise her whether he was willing to cooperate with the LCNA. This meeting never took place. Appellant, however, admitted that his decision to no longer cooperate with the LCNA would not have changed even if Special Agent 68 had come to see him on May 14, 2001.
 {¶ 28} After taking the matter under advisement, the trial court issued a lengthy judgment entry on June 11, 2001, denying appellant's motion to withdraw his guilty pleas, reasoning that the state had not violated the plea agreement. According to the trial court, "[the LCNA] made a reasonable effort to work with [appellant] and would have continued to have done so if [appellant] had not decided that his efforts were fruitless." As such, the trial court concluded that appellant had a change of heart, which was an inadequate basis for granting a motion to withdraw a guilty plea.
 {¶ 29} Thereafter, on July 19, 2001, the trial court sentenced appellant to a term of seven years in prison on the engaging in a pattern of corrupt activity charge and twelve months on the remaining charges to be served concurrently with each other and to the seven-year sentence.
 {¶ 30} From this judgment, appellant filed a notice of appeal advancing a single assignment of error:
 {¶ 31} "The trial court erred to the prejudice of the defendant-appellant by denying his pre-sentence motion to withdraw his plea in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."
 {¶ 32} In his sole assignment of error, appellant contends that the trial court abused its discretion in denying his presentence motion to withdraw his guilty pleas because the state had failed to perform its obligations under the plea agreement. According to appellant, after he entered his guilty pleas, the LCNA violated its promise to appellant that they would meet more frequently with him to arrange controlled drug transactions. Appellant further claims that he did not have a change of heart because his decision to withdraw his guilty pleas resulted from the LCNA's failure to cooperate with him.
 {¶ 33} It is axiomatic that a presentence motion to withdraw a guilty plea should be "freely and liberally granted." State v. Xie
(1992), 62 Ohio St.3d 521, 527. This, however, does not mean that a motion to withdraw a guilty plea will be granted automatically as "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." Id. at paragraph one of the syllabus.
 {¶ 34} Despite the more lenient standard applicable to a presentence motion to withdraw a guilty plea, an appellate court will reverse the trial court's determination only upon a showing of abuse of discretion. Id. at 527. "For us to find an abuse of discretion *** we must find more than an error of judgment. We must find that the trial court's ruling was `unreasonable, arbitrary, or unconscionable.'" Id. "`Thus, unless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion.'" Id. at 526, quoting Barkerv. United States (C.A.10, 1978), 579 F.2d 1219, 1223.
 {¶ 35} In determining whether a trial court has abused its discretion in denying a presentence motion to withdraw a guilty plea, this court has utilized the four-factor test established by the Eighth Appellate District in State v. Peterseim (1979), 68 Ohio App.2d 211. Statev. Gomez (Dec. 5, 1997), 11th Dist. No. 97-L-021, 1997 WL 772950, at 2. According to Peterseim, "the trial court does not abuse its discretion in denying the motion where: (1) the trial court, following the mandates of Crim.R. 11, ensured the defendant understood his rights and voluntarily waived those rights by entering the guilty plea; (2) the defendant was represented by highly competent counsel; (3) the defendant was given adequate opportunity to be heard, by way of a hearing wherein he could assert all arguments in support of his motion to withdraw the plea; and (4) the trial court gave careful consideration to the merits of the defendant's motion to withdraw the plea." (Emphasis omitted.) Gomez at 2, citing Peterseim at 214.
 {¶ 36} In the instant matter, appellant takes issue with the fourth condition, that is, whether the trial court gave careful consideration to the merits of his motion. For the reasons that follow, we believe that the trial court did so, as indicated by the comprehensive judgment entry in which the motion was denied.
 {¶ 37} The parties essentially agree that the plea agreement provides that if appellant cooperated with the LCNA in arranging successful drug transactions from jail, then the state would recommend a favorable sentence on appellant's behalf. At the motion hearing, Lieutenant Ebert explained that there was never a time when the LCNA told appellant it was not going to work with him. In fact, appellant cooperated with the LCNA until May 9, 2001. On that date, appellant essentially had a change of heart based on the subjective belief that the LCNA had failed to increase visitation with him after he entered his guilty pleas. However, neither Lieutenant Ebert nor Special Agent 68 mentioned that they had led appellant to believe there would be an increase in meetings upon the entering of the guilty pleas. Accordingly, there was no basis for appellant's belief that increased visitation with the LCNA agents would occur after he entered his guilty pleas. As such, appellant's mere change of heart in this case is insufficient to serve as the basis for a motion to withdraw a plea. State v. Drake (1991), 73 Ohio App.3d 640, 645; Statev. Lambros (1988), 44 Ohio App.3d 102, 103; Gomez at 3.
 {¶ 38} We are also unpersuaded by appellant's assertion that his case is analogous to State v. Walton (1981), 2 Ohio App.3d 117. InWalton, the defendant had entered into a plea agreement whereby he would testify against his brother in exchange for the state's recommendation of a four year sentence for involuntary manslaughter and the dismissal of other charges, and the trial court had "expressly indicated acceptance of the recommendation[,]" conditioned upon the defendant's testimony in his brother's case. Id. at 118. Very shortly thereafter when the defendant decided not to testify against his brother, the trial court not only refused to allow him to withdraw his plea, but also imposed a longer sentence than had been provided for in the plea agreement "in retaliation." Id.
 {¶ 39} Upon consideration, the Tenth Appellate District held that the trial court had abused its discretion "in both overruling the motion to withdraw and refusing to abide by the state's obligations under the plea bargain." Id. at 119. According to the Walton Court: "Whereimmediately after entering a guilty plea and plea bargain and prior tosentencing the defendant makes a motion to withdraw his guilty pleaindicating an intent not to live up to a portion of the plea bargain, thetrial court abuses its discretion in both overruling the motion towithdraw and refusing to abide by the state's obligations under the pleabargain.
 {¶ 40} "***
 {¶ 41} "The trial court in overruling the motion to withdraw the guilty plea expressly determined to implement the plea bargain despite defendant's indication that he would not follow through with a part of his obligation. The trial court had discretion at that time either (1) to set aside the plea bargain and the guilty plea, or (2) to enforce the state's obligation thereunder. It is fundamentally unfair for the trial court to refuse to relieve defendant from his part of the plea bargain but to relieve the state of its obligation. The proper action is to set aside the plea bargain, proceed with the trial of all charges, and to impose sentence as to those of which defendant is found guilty." (Emphasis added.) Id.
 {¶ 42} However, then Judge, Chief Justice Moyer dissented for the following reasons:
 {¶ 43} "[I]t is clear from the record that defendant understood his plea bargain and that he would receive a minimum sentence only if he testified against his brother. The record reflects that defendant's onlyreason for wishing to withdraw his guilty plea was that he wanted to`take his chances.'" (Emphasis added.) Walton at 119.
 {¶ 44} We agree with Chief Justice Moyer's reasoning. Further, the facts in Walton were significantly different. There, the attempted plea withdrawal was immediately following the entry of the plea, and the trial court had expressly indicated acceptance of the recommended four-year sentence. Walton at 118. Here, the motion to withdraw was made on May 14, 2001, more than a month from the entry of the guilty plea on April 10, 2001, and the instant trial court was not involved in the plea bargaining process.
 {¶ 45} In the instant matter, it is evident that the state's agreement to provide a favorable sentencing recommendation was directly related to appellant's promise to cooperate with the LCNA to arrange successful drug transactions. In fact, at the hearing, appellant acknowledged that he understood this:
 {¶ 46} "Q. And based on my advice, in part of my advice and the part on your consent, we decided that we were going to work with the Lake County Narcotics Agency or the FBI or the DEA?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. In hopes that we could obtain a favorable recommendation, is that correct?
 {¶ 49} "A. Yes"
 {¶ 50} "A negotiated plea agreement is contractual in nature."State v. Olivarez (Mar. 31, 1999), 11th Dist. No. 97-L-288, 1999 WL 262158, at 3. While appellant performed his obligation to plead guilty to five counts, he had not yet performed his undertaking to cooperate with the LCNA to arrange successful drug transactions. In fact, on May 9, 2001, appellant advised Special Agent 68 that he was no longer willing to set up the drug transactions.
 {¶ 51} Furthermore, "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."Santobello v. New York (1971), 404 U.S. 257, 262. Here, the state had performed its obligation by requesting the court to dismiss the remaining charges but had not yet performed its obligation with respect to appellant's sentence to provide a favorable recommendation. In other words, while the plea agreement was partially executed, appellant, notthe state, refused to perform further. "A defendant's failure to fulfill the terms of a plea agreement will relieve the government of reciprocal obligations under the agreement." State v. Woyan (July 21, 1997), 4th Dist. No. 96 CA 1772, 1997 WL 426117, at 4.
 {¶ 52} In light of the fact that the parties' unperformed promises were clearly tied together, we conclude that it was not inequitable to relieve the State, as the party aggrieved by appellant's refusal to perform his end of the bargain, of its promise with respect to sentencing, without rescinding those aspects of the bargain that had already been performed. See, e.g., State v. Lopez (Oct. 13, 2000), 2d Dist. No. 99-CA-120, 2000 Ohio App. LEXIS 4737, at 8-13 (refusing to follow the holding announced in Walton).
 {¶ 53} "A party to a contract who has voluntarily and without excuse refused to perform cannot treat the contract as rescinded for default of the other party subsequently occurring." Lopez at 12. That is precisely what happened here. Appellant refused to perform his promise to cooperate with the LCNA. Subsequently, the state declined to honor its promise with respect to sentencing. That, however, does not entitle appellant to rescission of the plea agreement. Lopez at 12.
 {¶ 54} In summation, we conclude that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty pleas as appellant did not establish that the state had failed to abide by the terms of the plea agreement. Rather, it was appellant who seemingly had a change of heart, which is insufficient justification to warrant the granting of a motion to withdraw.
 {¶ 55} Based on the foregoing analysis, appellant's sole assignment of error is meritless, and the judgment of the trial court is affirmed.
 {¶ 56} Judgment affirmed.
DONALD R. FORD and ROBERT A. NADER, JJ., concur.
[1] The record before this court does not contain a written copy of the plea agreement.
[2] On May 31, 2001, appellant's counsel filed his own affidavit in support of the motion to withdraw the guilty pleas.