**Wayne Ernest BARKER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**UNITED STATES of America, Appellee,**

v.

**Wayne Ernest BARKER, Appellant.**

**Nos. 77–1276, 77–1317.**

United States Court of Appeals, Tenth Circuit.

Submitted May 9, 1978.

Decided July 12, 1978.

Roger M. Theis, Asst. U. S. Atty., Topeka, Kan. (James P. Buchele, U. S. Atty., and Bruce E. Miller, Asst. U. S. Atty., Topeka, Kan., on the briefs), for appellee.

James D. Oliver, Wichita, Kan. (Philip S. Frick, Wichita, Kan., on the reply briefs), of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan. (*pro se* briefs filed by appellant).

Before BARRETT and McKAY, Circuit Judges, and BRATTON, District Judge.*

BARRETT, Circuit Judge.

Wayne Ernest Barker (Barker) appeals his conviction, following his guilty plea, of

receipt by a convicted felon of a firearm which had been transported in interstate commerce, in violation of 18 U.S.C. § 922(h).[1] Prior to sentencing, Barker unsuccessfully moved to withdraw his guilty plea. Consolidated with this direct appeal is Barker's appeal from the denial of his motion to vacate his sentence, pursuant to 28 U.S.C. § 2255.

We will first consider Barker's direct appeal of the firearm conviction. In September of 1976, Barker, who had been convicted in Ohio in 1958 on a felony charge of armed robbery, was found possessing a .38 caliber revolver. He was subsequently indicted for violation of 18 U.S.C. § 922(h). At his arraignment, he pled not guilty. Trial was set for November 8. Barker was allowed to remain free on bond. While he was awaiting trial, Barker's apartment in Houston, Texas, was searched. Some illicit items, including a sawed-off shotgun and several bags of marijuana, were seized in the course of the search.

On the morning of trial and after the jury had been empaneled and the Government's twelve witnesses were present, Barker and the United States Attorney's representative entered into a plea agreement. Barker agreed to withdraw his plea of not guilty and to enter a plea of guilty. In exchange, the Government agreed that it would not oppose Barker's release on bond until sentencing and that it would not seek to have his bond increased. The Government further agreed not to use any of the potentially incriminating evidence seized in his apartment in the course of any hearing dealing with Barker's release on bond.

Prior to accepting Barker's guilty plea, the trial court undertook a full hearing pursuant to Rule 11, Fed.R.Crim.Proc., 18 U.S.C. The court carefully ascertained that Barker's plea was made in an intelligent

---

\* Chief Judge of the District of New Mexico, sitting by designation.

1. (h) It shall be unlawful for any person—
 (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(h).

and voluntary manner. When the court questioned Barker about his mental competence, Barker stated that he had been evaluated at one time, but that since then he had been found to be competent and that he was presently competent. Barker was represented by competent counsel during the entire proceeding. With the advice and assistance of his attorney, Barker read and executed a "Petition to Enter Plea of Guilty and Order Entering Plea," pursuant to Rules 10 and 11, Fed.R.Crim.Proc., 18 U.S.C. In this document, he again acknowledged that his guilty plea was entered as a matter of his free will and that he was aware of the consequences of the plea. During this hearing, Barker did not contest the existence or validity of his prior Ohio felony conviction. He assured the trial court that he fully understood all of the elements of the crime with which he was charged. Sentencing was then set down for December 20, 1976. Barker was again released on bond.

On December 13, a week prior to the sentencing date, Barker, *pro se*, moved to have his guilty plea withdrawn. He based his motion on several grounds: that he was not guilty; that he had been coerced into making his plea because he had strong personal reasons for remaining free on bond; and that the evidence obtained from the search of his apartment, which the Government had promised not to use in exchange for the plea, had been illegally obtained. He alleged that he had entered the guilty plea because of Government "coercions, pressures and in order to stay out of jail." The trial court denied his motion and proceeded to sentence Barker to three years imprisonment.

Subsequently, Barker moved for reconsideration of the denial of his plea withdrawal motion. In denying this motion, the trial court issued a memorandum and order detailing the reasons for the denial of Barker's motion to withdraw his guilty plea: Barker had been represented by able counsel; he had been accorded a full Rule 11 hearing; he had entered his plea with complete understanding of the offense charged and the consequences of the plea; he had

entered the plea willingly; and that Barker had not been forced, coerced or threatened to enter the guilty plea. The trial court concluded that Barker had, in effect, been playing games with the court:

> We believe that Mr. Barker's plea of guilty and subsequent attempt to withdraw that plea did not result from any "coercion" or "involuntariness." It appears to the Court that Mr. Barker was attempting to manipulate the Government and the Court so that he could obtain that to which he was not entitled—six weeks of freedom on bond—without any adverse consequences.

[R., Vol. I, at 83.]

Undaunted, Barker later filed a memorandum objecting to the trial court's finding that he was mentally competent at the time he entered the guilty plea. Barker charged that the United States Attorney's office and the probation officer who had completed a presentence investigation report did not advise the court of the fact that he had been institutionalized in an Ohio mental hospital prior to his 1958 trial. Thereupon, the trial court directed that Barker be committed to the Springfield Medical Center, there to undergo a psychiatric examination, pursuant to 18 U.S.C. § 4244, in order to determine if Barker had been mentally competent when the guilty plea was tendered and the sentence was entered. The results of the Springfield examination were that Barker was determined to have been mentally competent when he entered his plea and when he was sentenced.

On appeal Barker and his attorney, in separate briefs, raise various contentions of error, including that: (1) the trial court applied an improper standard when it denied Barker's motion to withdraw his plea; (2) the trial court abused its discretion in refusing to allow his withdrawal of the guilty plea, and (3) the trial court erred in failing to conduct a full hearing on the issue of the effect of Barker's mental competence relating to his ability to enter a valid plea. A myriad of peripheral issues

are also raised; however, only the dispositive issues will be discussed.

## I.

■ Barker argues that the trial court applied an improper legal standard in denying his motion to withdraw his guilty plea by employing the criterion used in instances when a defendant moves to have his guilty plea withdrawn after sentencing.

Rule 32(d), Fed.R.Crim.Proc., 18 U.S.C., provides:

A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Hence, a pre-sentencing withdrawal motion is to be measured by different criteria than a motion made after sentencing. The test to be applied when a motion to withdraw is made before sentencing is that of "fairness and justice." *Dorton v. United States,* 447 F.2d 401 (10th Cir. 1971), quoting *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). On the other hand, a post-sentencing motion to withdraw should be granted only to prevent manifest injustice.

Barker bases his argument relative to the use of improper standard on the trial court's language contained in its memorandum and order denying the withdrawal motion:

We are not convinced that he would have presented legal ground sufficient to *mandate* allowance of his motion for withdrawal . . .

[R., Vol. I, at 82.]

There is no situation here which would *require* us to allow withdrawal of the guilty plea.

[R., Vol. I, at 86.]

Thus, Barker seems to contend that the use of the words "mandate" and "require" are indications that the trial court applied the stringent standard of "manifest injustice," rather than the more liberal standard of "fair and just." We must reject his contention.

■ Ordinarily "mandate" and "require" mean "to command," "to demand," and "to insist upon." (The American Heritage Dictionary, at 793 and 1105.) In choosing this language the trial court did not mean that it could permit withdrawal of the guilty plea only if manifest injustice were present. The court was, instead, simply expressing recognition that withdrawal of a plea of guilty is not an absolute right, but rather one resting solidly in the discretion of the trial court. The trial court correctly observed that inasmuch as Barker's plea was entered in a voluntary and intelligent manner, it was neither unfair nor unjust to deny his withdrawal motion.

## II.

Barker contends that the trial court abused its discretion by refusing to permit him to withdraw his guilty plea, even though he had presented valid justifications therefor. Barker argues that: the plea agreement was based on representations of fact and law which were shown to be mistaken and untrue; the plea was not knowingly and intelligently made, inasmuch as he was not informed of his defenses or advised that he would waive them by a guilty plea; and there were other factors which supported the withdrawal motion.

■ Even though the general rule is that motions to withdraw guilty pleas before sentencing are to be freely allowed and treated with liberality, [*Dorton, supra,*] still the decision thereon is within the sound discretion of the trial court. *Johnson v. United States,* 485 F.2d 240 (10th Cir. 1973). Thus, unless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion. *Johnson, supra.* One who enters a guilty plea has no right to withdraw it. It is within the sound discretion of the trial court to determine what circumstances justify granting such a motion. *United States v. Levine,* 457 F.2d 1186 (10th Cir. 1972); *Dorton, supra; Burnett v. United States,* 404 F.2d 29 (10th Cir. 1968).

We perceive no abuse of discretion by the trial court in refusing to grant Barker's withdrawal motion. The record establishes, in our view, that the trial court fully analyzed, treated and considered the problem before entering the order. We agree with the trial court's view that Barker was attempting to manipulate the criminal justice system:

> Even if we credited defendant's story, we would have difficulty finding legal grounds for allowing withdrawal of his plea. We simply do not believe his story and find no basis whatsoever for allowing withdrawal of this plea of guilty. As noted in *State v. Huntley, supra* at 179: "The figure of justice is blindfolded, but is not blind to those who seek to make a mockery and playtool of justice."
> [R., Vol. I, at 90 and 91.]

### III.

Barker urges that the trial court erred in failing to conduct a full hearing as to whether he was mentally competent to enter a valid plea. We must reject this claim as frivolous.

The trial court, in conducting the Rule 11 hearing, carefully and meticulously questioned Barker concerning his competence. The court, of course, personally observed Barker and spoke with him in order to determine whether Barker understood the charge and the consequences of his plea. The record clearly reflects that Barker was in control of his faculties. He had a clear understanding of the purpose and nature of the proceedings.

As a measure of complete caution, in order to assure that Barker was competent to enter the guilty plea, the trial court ordered a § 4244 examination. When the court received the results of this examination, it refused to appoint an independent psychiatrist to evaluate Barker. Furthermore, the trial court refused to permit Barker to cross-examine witnesses. We hold that this action was in nowise prejudicial inasmuch as Barker had been found to be mentally competent at the time of the plea. In our view, the series of motions which Barker filed relating to his mental competency appear to be yet another manifestation of his aim to manipulate court proceedings.

We turn now to a consideration of Barker's motion to vacate and set aside the judgment and sentence, pursuant to 28 U.S.C. § 2255. After sentencing, Barker filed this motion, predicated on the theory that the prior Ohio state conviction, which was an essential component of his federal charge, was invalid and therefore violative of due process principles. Barker, of course, appeals from the trial court's denial of this motion.

In 1957 Barker was indicted in Ohio on the charge of armed robbery. He was tried, convicted and sentenced to a term of more than one year. In instructing the jury, the state trial court quoted from the Ohio statute which enumerated the elements of unarmed, rather than armed, robbery. Hence, there was no instruction to the effect that one of the components of armed robbery is the use or showing of a dangerous weapon. However, there was no objection to the instruction. No direct appeal of that conviction was taken.

In denying Barker's motion the trial court observed, *inter alia,* that: Barker waived the right to challenge his conviction for illegal possession of a firearm by intentionally by-passing direct review and pleading guilty; his prior felony conviction was voidable and not void *ab initio;* and Barker failed to exhaust existing state remedies. It is to be noted that the main thrust of Barker's defense to the armed robbery charge was insanity.

On appeal Barker contends that his § 2255 motion should have been granted in that: (1) the Ohio felony conviction is constitutionally invalid; (2) the conviction under 18 U.S.C. § 922(h) cannot be based on the invalid prior felony conviction; and (3) even though he did not raise the issue of the invalid prior felony conviction at the time of his plea, he can raise it now. We reject Barker's contentions.

## I.

■ Barker argues that even though he did not raise the issue of the potential invalidity of his prior conviction at the time of his plea, he can do so now. We disagree. We hold that Barker waived this defense at the time of his voluntary, intelligent guilty plea.

Barker admits that when he entered the guilty plea to the § 922(h) charge in 1976 he had known of the deficiency of the instructions in the Ohio prosecution for several years. Barker was fully aware of the nature and elements of the § 922(h) charge. Thus, with full knowledge thereof, he voluntarily and intelligently entered his guilty plea.[2] We agree with the trial court's assessment that Barker, by pleading guilty, waived his right to assert the invalidity of the prior Ohio state conviction via a § 2255 motion:

> Applying these principles to the facts at hand, it is clear that Barker has waived his right to present this defense in a § 2255 motion. Barker cannot claim that he acted without sufficient awareness of the relevant circumstances and likely consequences of a plea of guilty. In the Court file, Barker makes the statement that he was employed recently doing legal research for a law firm. His record indicates that he has had numerous dealings with the law. Furthermore, in Case No. 76–71–CR5, a finding was made that Barker's guilty plea was entered voluntarily and intelligently and with the advice of competent counsel. The voluntariness and intelligent character of Barker's plea have not been challenged by Barker in this motion. It is thus held that Barker's plea of guilty to the federal charge was an intelligent act

done with sufficient awareness of the relevant circumstances and likely consequences, and that by so pleading he has waived the defense he attempts to assert herein.

[R., Vol. I, at 67–68.]

■ In essence, Barker's voluntary plea of guilty and his failure to contest the validity of the prior Ohio state felony conviction preclude such challenge under § 2255, inasmuch as the conclusive effect of a voluntary plea of guilty is a waiver of all nonjurisdictional defects and defense occurring prior to the plea. *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *United States v. Levine, supra; Corn v. State of Oklahoma*, 394 F.2d 478 (10th Cir. 1968), *cert. denied*, 393 U.S. 917, 89 S.Ct. 245, 21 L.Ed.2d 203 (1968). Again, we adopt with approval the trial court's observations that:

> A plea of guilty knowingly and intelligently made, waives all nonjurisdictional defects and defenses occurring prior thereto. *Chaney v. United States*, No. 76–1116, unpublished (10th Cir. January 4, 1977); *United States v. Levine*, 457 F.2d 1186 (10th Cir. 1972); *Corn v. State of Oklahoma*, 394 F.2d 478 (10th Cir. 1968), *cert. denied*, 393 U.S. 917 [89 S.Ct. 245, 21 L.Ed.2d 203] (1968); *Brown v. Cox*, 347 F.2d 936 (10th Cir. 1965). The general principles which were developed by the United States Supreme Court in the "Brady trilogy," and reaffirmed in *Tollett v. Henderson*, are clearly summarized in the following passage from Tollett:
>
> > A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admit-

---

**2.** During the Rule 11 hearing the following colloquy took place:

THE COURT: Do you also understand by entering a plea of guilty you are admitting all of the allegations made in this Indictment?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: Now, do you also understand that under a plea of not guilty it would be necessary for the government to prove each and every element that is contained in this

Indictment. Those elements would be *that you had been convicted; that it was a crime punishable by a term exceeding one year;* that you did knowingly receive a firearm which had been transported in interstate commerce all in violation of the Code Section; do you understand that?

THE DEFENDANT: Yes, sir, Your Honor. (Emphasis supplied.)

[R., Vol. I, at 9–10.]

ted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not . . . (competent)."

[R., Vol. I, at 66.]

## II.

Barker contends that because his federal conviction was based on an invalid prior state felony conviction, it must be vacated. Barker relies on *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) and the many cases following it for the rule that a conviction obtained in violation of one's basic rights cannot be used to support guilt or to enhance punishment for another offense.

 *Burgett* has been applied to cases involving prosecutions for federal firearms violations in differing ways. One line of cases holds that when a voidable prior conviction is overturned for constitutional reasons, even when reversal is subsequent to the federal firearms charge, the federal charge is to be overturned as well. *See, e. g., United States v. Lufman,* 457 F.2d 165 (7th Cir. 1972); *United States v. DuShane,* 435 F.2d 187 (2nd Cir. 1970). There is, however, a contrary approach which applies the rule that once one is convicted of a felony he is within the proscription against possession of firearms until that prior conviction is *actually* overturned or expunged. *United States v. Liles,* 432 F.2d 18 (9th Cir. 1970). Liles, a convicted felon, was subsequently tried and convicted of possessing a firearm. The court affirmed his conviction for the federal firearm violation notwithstanding the fact that the prior conviction, which was an essential element of the firearms conviction, was reversed one day before he was convicted of the firearms offense. It was there held that Liles' possession of the revolver was unlawful for *one of*

*his status at the time he possessed it.* It was not made lawful by the subsequent reversal of his prior felony conviction. We approve and adopt the *Liles* holding. In our view, this rule embraces the spirit and purpose of the Gun Control Act of 1968. The overriding concern expressed in the legislative history of that Act reveals that possession of firearms should be carefully limited to those persons who are responsible and law-abiding. 1968 U.S.Cong. Ad. News at 2112, 2163–2169. We are further persuaded by *United States v. Graves,* 554 F.2d 65 (3rd Cir. 1977). There the Court, sitting en banc, held that an underlying prior conviction will apply in a federal firearm prosecution if it has not been challenged on appeal or by collateral attack:

To ascertain whether Congress intended that an outstanding felony conviction could lead to liability under the firearms statutes, even though a defendant asserts (constitutional) flaws in the prior conviction, we must examine those materials which may afford insight into Congressional intent: (a) the language of the statutes, (b) the legislative history, and (c) the opinions of other courts which have endeavored to interpret the statutes.

These materials suggest that the legislative draftsmen desired persons with extant, though arguably unconstitutional, convictions to forbear from the purchase and possession of firearms until their convictions are voided by the courts or until they are freed from such disability by executive action. Failure to so refrain was intended to subject such persons to the penalties specified in the Act. Congress, in our view, did not expect disputes over the constitutional validity of a prior conviction to intrude upon trials of federal weapons offenses, at least in the type of factual context presented by this case. 554 F.2d, at 68–69.

We deem the issues discussed dispositive of Barker's appeals. Accordingly, we elect not to discuss other contentions presented. They are not persuasive.

WE AFFIRM.