JOURNAL ENTRY and OPINION.
{¶ 1} Darryl Crayton appeals his conviction on four aggravated robbery counts, three of which included a three-year firearm specification. Crayton assigns the following as errors for our review:
 {¶ 2} "The court erred in denying appellant's motion to dismissbase [sic] upon lack of speedy trial, thereby denying appellant's rightto a speedy trial as guaranteed him by the sixth amendment (sic) to theUnited States Constitution, the Ohio Constitution, and Ohio Revised CodeSection 2945.71.
 {¶ 3} "The court erred by denying appellant's motion to withdrawhis guilty pleas prior to sentencing.
 {¶ 4} "The trial court erred by imposing maximum consecutivesentences in violation of R.C. 2929.14, R.C. 2929.19 and 2929.11(B)."
 {¶ 5} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 6} The charges against Crayton constituted two lower court cases. In the first case, the grand jury's indictment included one count of aggravated robbery. In the second case, the grand jury indicted Crayton on three counts of aggravated robbery, each included a three-year firearm specification.
 {¶ 7} On February 6, 2001, Crayton was arrested. Following multiple continuances and other delays, on March 4, 2002, the trial court consolidated these cases and accepted Crayton's guilty plea to four aggravated robbery counts and three three-year firearm specifica-tions. At sentencing, the trial court denied Crayton's motion to withdraw his plea and imposed ten years imprisonment on each aggravated robbery count, the maximum allowable by statute, and three years on each gun specification. For purposes of sentencing, the court merged the three specifications, thus netting Crayton forty-three years imprisonment. The court ordered Crayton to serve these sentences consecutively.
 {¶ 8} In his first assigned error, Crayton argues the trial court erred by violating his constitutional and statutory speedy trial right. We disagree.
 {¶ 9} The State must bring the accused to trial within the statutorily prescribed period which exists to protect the accused from unnecessary delays and the burdens incident thereto.[1]
 {¶ 10} Our standard when reviewing a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq.[2] Where we find ambiguity, we construe the record in favor of the accused.[3]
 {¶ 11} We begin our count with February 7, 2001, the date after Crayton's arrest.[4] From that date until March 4, 2002, when Crayton pled guilty, 391 days elapsed. Because the State did not hold Crayton solely on the pending charge, he is not entitled to R.C. 2945.71(E)'s triple-count provision. Thus, 391 is the gross sum of elapsed speedy trial days.
 {¶ 12} We toll the speedy trial count during "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."[5] The court granted Crayton's motions for continuance from April 12, 2001 until April 23, 2001; May 17, 2001 until June 8, 2001; September 7, 2001 until October 23, 2001; January 17, 2002 until February 19, 2002. These continuances toll the speedy trial statute for 116 days which we subtract from 391, leaving a preliminary net of 275 speedy trial days.
 {¶ 13} We also toll "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused."[6]
 {¶ 14} Crayton filed numerous motions, including two motions to suppress, a motion to withdraw counsel, several discovery motions, and a motion for a transcript at the State's expense. These defense motions toll the speedy trial count far in excess of the days necessary to bring the State within speedy trial compliance. Accordingly, Crayton's first assigned error is without merit.
 {¶ 15} In his second assigned error, Crayton argues the trial court erred by denying his motion to withdraw his guilty plea. We disagree.
 {¶ 16} Although a defendant is not vested with an absolute right to withdraw a guilty plea, a motion for withdrawal made prior to sentencing is to be freely allowed and liberally treated.[7] The decision to grant or deny such motion is fully within the trial court's discretion and shall remain undisturbed absent a showing that the trial court abused its discretion.[8] "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *."[9]
 {¶ 17} "A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request."[10]
 {¶ 18} Crayton argues the trial court erred by accepting his plea because he was represented by incompetent counsel and because the court failed to provide a complete and impartial hearing on the motion. Neither argument holds merit.
 {¶ 19} Crayton first attacks his counsel's competency by asserting he failed to obtain an audio tape which allegedly contains exculpatory evidence. Crayton's counsel filed numerous motions for discovery which would include discovery of the audio tape. Further, Crayton admittedly holds a transcription of the audio tape.
 {¶ 20} Crayton also attacks his counsel's competence by asserting he failed to fully counsel him regarding his plea. Perhaps Crayton and his counsel held differing opinions regarding the plea agreement; however, nothing in the record indicates his counsel failed to adequately explain the plea or its potential effects.
 {¶ 21} Further, although not conclusive in nature, Crayton expressed satisfaction with his counsel after he entered, and before the court accepted, his plea. Neither argument put forth by Crayton persuades us that his counsel was incompetent.
 {¶ 22} Crayton also argues the trial court failed to provide him a complete and impartial hearing on his motion. In support, Crayton cites to the record where the court warned him of exposure to greater prison time by not pleading, commented on the strength of the State's case, and assured him of its integrity in sentencing. Our review of the record demonstrates the trial court did not act partially; rather, the court merely assured Crayton that he would receive fair and impartial treatment regardless of whether he proceeded to trial or entered a plea.
 {¶ 23} Having determined Crayton failed to establish his counsel's incompetence or that the trial court provided an incomplete or partial hearing, we determine the trial court did not abuse its discretion by denying Crayton's motion to withdraw his guilty plea. Accordingly, Crayton's second assigned error is without merit.
 {¶ 24} In his third assigned error, Crayton presents two distinct propositions of law. First, he argues the trial court erred by imposing maximum allowable sentences; and second, he argues the trial court erred by running those sentences consecutively. We disagree with both positions.
 {¶ 25} In case number 404100, the trial court sentenced Crayton to ten years imprisonment for aggravated robbery, a first degree felony. In case number 404609, the trial court sentenced Crayton to three years imprisonment on the gun specifications and ten years imprisonment for each of three additional aggravated robbery charges. Each term was the maximum allowed by the Revised Code for each charge.[11]
 {¶ 26} The law is well-settled that we will not reverse a trial court on sentencing issues unless the defendant shows by clear and convincing evidence that the trial court has erred.[12]
 {¶ 27} A sentencing court may only impose a maximum term of imprisonment upon a previously imprisoned offender "who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."[13] The trial court must state these findings on the record at the time of sentencing.[14]
 {¶ 28} We have repeatedly held that findings will suffice even in the absence of so called "magic words" as long as the court demonstrated the findings intended by the Revised Code.[15] Here, on multiple occasions the trial court found Crayton, a previously imprisoned offender, committed the worst form of the offense and poses the greatest likelihood of recidivism. Although the court did not precisely use statutory language, its findings satisfied R.C. 2929.14(C).
 {¶ 29} In addition to findings, the trial court must give its reasons for imposing a maximum sentence.[16] Reasons are the trial court's bases for its findings which evince its adherence to the General Assembly's policies of establishing consistency in sentencing and curtailing maximum sentences.[17]
 {¶ 30} In support of finding Crayton committed the worst form of the offense, the court reasoned Crayton used "firearms to terrorize store clerks, and then in addition to that, the tremendous effort made to flee the scene, resist arrest, a chase, and apprehension. * * *. The only thing that can be more serious would be if the firearm had been fired and somebody had been wounded or died, in which case it would be aggravated murder under consideration."
 {¶ 31} In support of finding Crayton poses the greatest likelihood of recidivism, the court reasoned that Crayton has several convictions for aggravated robbery and has a prior record involving multiple robberies and felonious assault with firearm specifications.
 {¶ 32} We determine the trial court's reasons adequately support its findings. Accordingly, the trial court did not err by imposing maximum sentences.
 {¶ 33} When the trial court imposes consecutive sentences, its discretion is guarded in that it must make findings under R.C.2929.14(E)(4) and must give reasons for the findings under R.C.2929.19(B)(2)(c). The trial court must find that the punishment imposed is necessary to protect the public from future crime or to punish the offender, proportional both as to the seriousness of the offender's conduct and danger posed to the community, and one of the statutory fact situations exists under R.C. 2929.14(E)(4)(a), (b), or (c).[18]
 {¶ 34} Here, the court provided the following findings and reasons:
 {¶ 35} "For the reasons stated by the prosecutor relative to the gravity of this offense and circumstances of the offense, I find specifically that the consecutive sentences are necessary to protect the public from future crimes, and to punish the offender, to punish you. The sentences I've given are not just proportionate to the seriousness of your conduct; the danger posed to the public and the harm caused by the offenses were so great in this case that no single prison term would be an adequate response by the State of Ohio to your behavior.
 {¶ 36} "The victims in this case were traumatized. Their lives were affected. And these are all reasons why I'm finding that consecutive sentences are necessary. We don't want in the future any other citizens to be traumatized by your crime. These sentences are necessary to punish your conduct.
 {¶ 37} "[Consecutive sentences] are not just proportionate to the seriousness of the conduct. The conduct that you found yourself in was grave and was serious. It was a threat to the life and safety of a number of members of the public. Your resistence to arrest and your fleeing and high speed chase endangered unknown members of the public who had been in harm's way.
 {¶ 38} "Once again, I'm satisfied that no single prison term would be an adequate response. You must be taken off the streets. * * *."
 {¶ 39} Again, although the court did not use the precise statutory language in all respects, the absence of "magic words" does not vitiate the trial court's findings. We determine the trial court provided the necessary findings and reasons permitting consecutive sentences.
 {¶ 40} Crayton also argues that R.C. 2929.11(B)'s requirement for consistency was not complied with by the trial court. Several courts have held more than once that R.C. 2929.11(B) is a guideline not a requirement.[19] Consequently, we see nothing in this record that demonstrates that the trial did not follow the principles and guidelines of R.C. 2929.11(B). Accordingly, Crayton's third assigned error is without merit.
 {¶ 41} Judgment affirmed.
 {¶ 42} It is ordered that appellee recover of appellant its costs herein taxed.
 {¶ 43} The Court finds there were reasonable grounds for this appeal.
 {¶ 44} It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
 {¶ 45} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., CONCUR; TIMOTHY E. McMONAGLE, J., CONCURS IN PART ANDDISSENTS IN PART. (SEE ATTACHED CONCURRING AND DISSENTING OPINION)
[1] State v. Johnson (Mar. 8, 2001), Cuyahoga App. Nos. 78097, 78098 and 78099.
[2] State v. DePue (1994), 96 Ohio App.3d 513, 516; See, also,Cleveland v. Seventeenth Street Association (Apr. 20, 2000), Cuyahoga App. No. 76106, State v. Gabel (Oct. 31, 1996), Cuyahoga App. No. 69607.
[3] State v. Singer (1977), 50 Ohio St.2d 103, 109; State v. Mays
(1996), 108 Ohio App.3d 598, 609.
[4] R.C. 2945.71; See, Gabel, citing State v. McCornell (1993),91 Ohio App.3d 141, 145.
[5] R.C. 2945.72(H).
[6] R.C. 2945.72(E).
[7] State v. Xie (1992), 62 Ohio St.3d 521; State v. Peterseim (1980),68 Ohio App.2d 211, quoting Barker v. United States (1978),579 F.2d 1219.
[8] Xie; Peterseim.
[9] State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted).
[10] Peterseim, paragraph three of the syllabus.
[11] See R.C. 2911.01(C); R.C. 2929.14(A)(1).
[12] R.C. 2953.08(G)(1); State v. Hollander (July 5, 2001), Cuyahoga App. No. 78334; State v. Haamid (June 21, 2001), Cuyahoga App. No. 78761.
[13] R.C. 2929.14(C).
[14] See State v. Edmonson (1999), 86 Ohio St.3d 324.
[15] See State v. Ohler, 2002-Ohio-3899, Cuyahoga App. No. 79740; Statev. Smith (2001), 136 Ohio App.3d 343; State v. Nichols (Aug. 19, 1999), Cuyahoga App. Nos. 74732 and 74733.
[16] R.C. 2929.19(B)(2)(d).
[17] See R.C. 2929.11 et seq.; see, also, Edmonson.
[18] As pertaining to this appeal, R.C. 2929.14(E)(4)(b) states the following as one of three alternative findings: "The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct."
[19] State v. Bolton (Sept. 5, 2002), Cuyahoga App. No. 80263, 2002-Ohio-4571; State v. Pempton (Sept. 24, 2002), Cuyahoga App. 80255, 2002-Ohio-5831; State v. Quine (Dec. 18, 2002), Summit County 20968, 2002-Ohio-6987; State v. Hunt (Jan. 16, 2003), Cuyahoga App. No. 81305, 2003-Ohio-175; State v. Smith (Jan. 16, 2003), Cuyahoga App. No. 81056, 2003-Ohio-168.