[Cite as *State v. Karmasu*, 2011-Ohio-3253.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

     Appellee

     v.

MAHARATHAN M. KARMASU
aka JAMES PAXSON

     Appellant

C.A. No.     25210

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 09 06 1893

DECISION AND JOURNAL ENTRY

Dated: June 30, 2011

---

CARR, Judge.

{¶1}    Appellant, Maharathah[1] Karmasu, appeals the judgment of the Summit County Court of Common Pleas, which denied his motion to withdraw his guilty plea. This Court affirms.

I.

{¶2}    On June 23, 2009, Karmasu was indicted on one count of extortion in violation of R.C. 2905.11(A)(3)/(A)(5), a felony of the third degree; one count of menacing by stalking in violation of R.C. 2903.211(A)(1), a felony of the fourth degree; one count of identity fraud in violation of R.C. 2913.49(B)(1), a felony of the fifth degree; and one count of telecommunications harassment in violation of R.C. 2917.21(A)(3), a misdemeanor of the first

---

[1] Although the record spells Karmasu's first name "Maharathan," we adopt the spelling he uses in his pro se motions to the trial court.

degree. On August 17, 2009, a supplemental indictment issued, charging Karmasu with one count of extortion in violation of R.C. 2905.11(A)(3), a felony of the third degree; one count of menacing by stalking in violation of R.C. 2903.211(A)(1), a felony of the fourth degree; and one count of identity fraud in violation of R.C. 2913.49(B)(1), a felony of the fifth degree. On September 24, 2009, a second supplemental indictment issued, charging Karmasu with one count of extortion in violation of R.C. 2905.11(A)(3)/(5), a felony of the third degree; and one count of identity fraud in violation of R.C. 2913.49(B)(1), a felony of the fifth degree. Karmasu pleaded not guilty to the charges.

{¶3} At the initial pretrial on July 7, 2009, the trial court stated that it was ordering a competency evaluation. Brian O'Reilly, Ph.D., evaluated Karmasu and submitted a report to the court in which he opined, based upon reasonable scientific certainty, that Karmasu understands the nature and objectives of the proceedings against him and is capable of assisting in his defense. The State and defense counsel stipulated to the admissibility of the report. Defense counsel further asserted that, based on his many meetings with his client, he believed Karmasu to be competent. After reviewing the psychologist's report, the trial court issued a journal entry in which it found Karmasu competent to stand trial.

{¶4} Although he was represented by counsel during the proceedings, Karmasu filed pro se approximately 18 motions and notices of violations of his constitutional rights. The trial court instructed defense counsel to review the various motions to decide which ones he would pursue on Karmasu's behalf. The State, too, filed various motions. The trial court heard all pending motions on October 6, 2009, and issued a journal entry on October 27, 2009, ruling on some motions and holding others in abeyance.

{¶5} The matter proceeded to final pretrial on October 27, 2009. After the trial court denied Karmasu's motion to cross-examine the victim himself at trial, Karmasu orally moved to be able to represent himself. The trial court took the matter under advisement and maintained the October 30, 2009 trial date.

{¶6} On October 30, 2009, the trial court revisited Karmasu's motion to represent himself. The court explained that, if the motion were granted, defense counsel would be appointed to act as "standby" counsel for purposes of consultation but that he would not be permitted to take an active role in Karmasu's representation. Karmasu expressed a continued desire to represent himself. Over the course of 17 pages of transcript, the trial court explained in detail all the stages of a trial, from jury selection to submission of the case to the jury, and what Karmasu would need to be able to do to represent himself effectively. Karmasu asserted at every stage that he understood and believed he would be able to represent himself.

{¶7} Over the course of another 17 pages, the trial court then explained every charge pending against the defendant, informed him of the potential penalties including ranges of prison time and amounts of fines. The trial court further informed the defendant regarding various defenses he could present. In addition, the trial court directed defense counsel to give a copy of the State's bill of particulars to Karmasu for his review. Karmasu asserted that he understood the nature of all the charges and their potential penalties.

{¶8} The trial court next informed Karmasu that, in the event he was convicted, he would have the right to argue at sentencing in regard to mitigation, specifically, why he should not be subjected to certain terms or forms of punishment, for example, consecutive sentences or maximum terms. Karmasu asserted he understood and would be in a position to argue on his own behalf in mitigation. The trial court then explained the general risks to a lay person in

representing himself, including mistakes that might likely occur as a result of the need to make split second decisions and comply with procedural rules. Karmasu asserted that he needed to confer with counsel about those risks. The court took a recess to allow Karmasu to consult with defense counsel.

{¶9} After the recess, the State informed the trial court that the parties had had an opportunity to enter into plea negotiations and that Karmasu was deliberating. In the meantime, the trial court continued explaining to Karmasu the issues he would need to consider before deciding to represent himself. The trial court informed Karmasu that he would have to comply with rules of evidence and addressed a document referred to as the "global resolution" which Karmasu purported granted him permission by the victim to engage in activities which formed the bases of the instant criminal charges. The trial court explained that Karmasu would not be allowed to present the "global resolution" as evidence in opposition to the State's case against him because it did not constitute an enforceable agreement. The trial court explained that the purported agreement was not signed as required by its own terms, did not comply with the statute of frauds, and was void as against public policy. The trial court emphasized repeatedly that one cannot contract away criminal culpability as a matter of public policy. Because Karmasu intended to rely on the "global resolution" to demonstrate that he acted with permission of the victim so that his acts could not be considered criminal, he informed the court that he again needed to consult with counsel about his desire to proceed pro se. The court again took a recess.

{¶10} When the hearing resumed on the record, Karmasu asserted he would represent himself. The trial court informed him that he must orally assert on the record his understanding of the risks associated with that decision and his desire to proceed pro se, as well as execute a written waiver of the right to counsel, before the court would allow him to represent himself.

Before that could happen, however, the State asserted that the parties had again engaged in plea negotiations during the break and that Karmasu wished to enter a plea to the charges. Karmasu informed the court that the elements of a plea agreement had been established.

{¶11} The State informed the trial court that Karmasu would withdraw his former plea of not guilty and enter a plea of guilty to one count of extortion and one count of menacing by stalking in exchange for the State's dismissal of the remaining seven charges and the State's recommendation to the Adult Parole Authority, should the defendant be sentenced to prison, that Karmasu receive a period of one year post-release control to be served in the county where he relocates. The State emphasized, however, that it could only make recommendations regarding post-release control because it is "not anything the State can specifically control." The State asserted that there was no agreement as to any recommendation by the State regarding sentencing and that the State would recommend a prison term of six years. Defense counsel informed the court that he had discussed the matter with Karmasu and the State, that the State's recitation of the terms of the plea agreement was accurate, and that he had advised Karmasu of the rights he would be waiving by withdrawing his former plea and entering a plea of guilty.

{¶12} The trial court then inquired of the defendant. The court first inquired whether Karmasu wished to continue to have defense counsel represent him during the plea and subsequent sentencing proceedings. Karmasu asserted that he wished to proceed with counsel. The trial court engaged in further colloquy with Karmasu, the specifics of which are recited below. Karmasu then withdrew his prior not guilty plea and pleaded guilty to one count of extortion and one count of menacing by stalking. The trial court found that Karmasu entered that plea knowingly, voluntarily, and intelligently and made a finding of guilt for the record. The court ordered a presentence investigation report and scheduled the matter for sentencing.

{¶13} On the date scheduled for sentencing, Karmasu informed the trial court that he wished to withdraw his guilty plea because the journal entry did not reflect the State's promise to recommend one year of post-release control and he did not believe that the State would follow through with its promise. He further asserted that he believed the State could not fulfill its promise to recommend that he be able to serve any term of post-release control outside of Summit County. Finally, Karmasu asserted that he wished to withdraw his plea because he was not guilty of extortion, claiming "I'm guilty, at most, of coercion." The trial court asserted it would order a copy of the change of plea hearing for review and it concluded the proceedings.

{¶14} On December 14, 2009, the trial court held a hearing on Karmasu's motion to withdraw his guilty plea, the specifics of which are discussed below. Upon consideration of the parties' arguments, the trial court denied Karmasu's motion to withdraw his guilty plea and proceeded to sentencing.

{¶15} The victim, a police officer, and Karmasu were permitted to make statements to the court. The State recommended a prison sentence of six years and a one year term on post-release control. Karmasu recommended a sentence "on the lower end" because he never touched or hit the victim. The trial court also reviewed the presentence investigation report and a written statement from the victim's daughter. Upon consideration of the relevant statutory factors, the trial court sentenced Karmasu to an aggregate term of six-and-a-half years in prison, imposed a fine of $1,000 on each of the two counts, issued a no contact order between the defendant and the victim and her children, and informed Karmasu that he was subject to a term of post-release control of up to three years. Karmasu filed a timely appeal, raising two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED IN NOT ALLOWING APPELLANT KARMASU TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING AS AUTHORIZED UNDER CRIM.R. 32.1."

**{¶16}** Karmasu argues that the trial court abused its discretion by denying his presentence motion to withdraw his guilty plea. This Court disagrees.

**{¶17}** This Court reviews a motion to withdraw a guilty plea under the abuse of discretion standard. *State v. Xie* (1992), 62 Ohio St.3d 521, 526. An abuse of discretion implies more than a mere error of judgment or law, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621. Unless it is established that the trial court acted unjustly or unfairly, an appellate court cannot find that an abuse of discretion occurred. *Xie*, 62 Ohio St.3d at 526, quoting *Barker v. United States* (C.A. 10, 1978), 579 F.2d 1219, 1223.

**{¶18}** Crim.R. 32.1 permits a defendant to file a pre-sentence motion to withdraw his plea. Although a pre-sentence motion to withdraw a guilty plea is generally "to be freely allowed and treated with liberality" by the trial court, the decision to grant or deny such a motion is nevertheless within the sound discretion of the trial court. Id. Moreover, "[a defendant] who enters a guilty plea has no right to withdraw it." Id. To prevail on a motion to withdraw a guilty plea, a defendant must provide a reasonable and legitimate reason for withdrawing his guilty plea. *State v. Dewille* (Nov. 4, 1992), 9th Dist. No. 2101, citing *Xie*, 62 Ohio St.3d at 527; see, also *State v. Van Dyke*, 9th Dist. No. 02CA008204, 2003-Ohio-4788, at ¶10. Determining whether the defendant's reason is reasonable and legitimate also lies within the trial court's sound discretion. *State v. Rosemark* (1996), 116 Ohio App.3d 306, 308. Moreover, "the good

faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by th[e] [trial] court[,]" and therefore, a reviewing court should defer to the trial court's judgment. (Quotations omitted.) *Xie*, 62 Ohio St.3d at 525.

{¶19} A trial court does not abuse its discretion in denying a motion to withdraw a plea when the following three elements are present: (1) the defendant was represented by competent counsel; (2) the trial court provided the defendant with a full hearing before entering the guilty plea; and (3) the trial court provided the defendant with a full hearing on the motion to withdraw his guilty plea and considered the defendant's arguments in support of his motion to withdraw his guilty plea. *Rosemark*, 116 Ohio App.3d at 308. Although appellant has not argued error under the first two prongs of the test, this Court must address all three prongs.

Competency of Counsel

{¶20} This Court initially notes that an attorney properly licensed in Ohio is presumed competent. *State v. Lott* (1990), 51 Ohio St.3d 160, 174, certiorari denied (1990), 498 U.S. 1017. The record supports this presumption. As previously noted, Karmasu has not alleged counsel's incompetence, and this Court has found no evidence to indicate that trial counsel was ineffective. Moreover, after Karmasu expressed a desire to represent himself and the trial court explained in great detail the responsibilities he would assume in doing so, Karmasu conferred several times with counsel and ultimately asserted that he was "content" to be represented by the attorney whom the court had appointed early in the case to represent him. The trial court's lengthy colloquy with Karmasu before he entered his guilty plea included the following observation by the court: "The record should reflect that your attorney has spent substantially more time working on your case than I have ever seen appointed counsel work on any other case." When the trial court asked whether he was "satisfied with the legal representation [appointed counsel]

has provided," Karmasu asserted, "Yes." Based on the foregoing, we conclude that Karmasu was represented by competent counsel. Accordingly, the first prong of the *Rosemark* test is satisfied. See *Rosemark*, 116 Ohio App.3d at 308.

Full Hearing Before Entering Guilty Plea

{¶21} After the trial court engaged in a lengthy colloquy with Karmasu after he expressed a desire to represent himself, the State informed the court that the parties had been able to engage in plea negotiations during the two recesses the court had granted to allow Karmasu to confer with counsel. Karmasu, too, asserted that the parties had reached an agreement. After ensuring that the defendant wished to proceed with the assistance of counsel, the trial court directed the State to recite the terms of the plea agreement for the record. Karmasu agreed that the State properly recited the terms of the agreement. Although the trial court had just spent a significant amount of time discussing the charges, potential sentences, and other matters with Karmasu in relation to his earlier request to proceed pro se, the trial court repeated its earlier comments, and more, in an effort to determine whether Karmasu wished to waive his right to a trial and enter a plea of guilty to two charges. This Court has set out in great detail below the substance of the trial court's change of plea colloquy with Karmasu. The trial court informed the defendant of the nature of the charges; all potential penalties associated with the charges, including fines and post-release control; the penalty for a violation of post-release control; and all the rights (at both the trial and appellate levels) he would be waiving by withdrawing his former not guilty plea and entering a plea of guilty. Karmasu asserted each time that he understood what the trial court explained and that, further, his attorney had also answered all his questions to his satisfaction. Karmasu asserted that he had not been threatened or promised anything in return for his plea other than what the parties had placed on the record. He

then asserted that he wished to plead guilty to the two remaining charges. The trial court expressly found that Karmasu's guilty plea was knowingly, voluntarily, and intelligently entered. Based on the foregoing, we conclude that Karmasu was afforded a full hearing prior to his entering his guilty plea, thereby meeting the second prong of the *Rosemark* test. See *Rosemark*, supra.

Full Hearing on Motion to Withdraw Plea

{¶22} When Karmasu informed the trial court immediately prior to his scheduled sentencing hearing that he wished to withdraw his plea, the trial court asked Karmasu to enunciate the grounds which would establish a reasonable and legitimate reason for the withdrawal. After Karmasu enunciated three bases for his motion, the trial court suspended the proceedings to allow for the preparation of a transcript of the change of plea hearing since Karmasu raised some issues arising out of it. Karmasu asserted the following three grounds in support of his motion to withdraw his plea: (1) he believed he could not in fact serve any term of post-release control outside of Summit County; (2) he believed that the State lied by promising he would serve only one year on post-release control when the State had no authority to dictate the length of his post-release control; and (3) he was not guilty of extortion. The trial court then scheduled a full hearing on the motion for the following week.

{¶23} At the hearing, the trial court addressed the three grounds Karmasu had raised in support of his oral motion to withdraw his guilty plea prior to sentencing. First, the court asserted that it had conferred with the Adult Parole Authority and had learned that, prior to a person's release from prison, the person must provide an address of intended residence. As long as the address was a legitimate address, post-release control would take place in that county. The trial court asserted that it was the defendant's right to specify where he would live after release

from prison, not the right of the Adult Parole Authority. Karmasu argued that he currently had three addresses he could give and they were all in Summit County, the county in which he did not want to live so as to avoid the potential for future problems with the victim. Karmasu gave as his only possible addresses the following: the address of the victim's prior attorney, the victim's address, and the halfway house where he was ordered to live as a condition of bond. The trial court clarified that the issue of the defendant's residence upon release from prison, if he were ultimately sentenced to prison, need not be determined until the time of his release and that he need not serve any post-release control in Summit County unless he failed to provide an alternative address or he provided four addresses and none of them were legitimate. Moreover, none of the addresses Karmasu could provide at the hearing were viable residences for him. He could not reasonably believe that he would be welcomed into the home of either the victim's prior attorney or the victim. In addition, he had been ordered to live in the restricted halfway house as a part of maximum pretrial supervision as a condition of bond. There was no authority for his return to the halfway house once he was no longer on bond.

{¶24} Second, the trial court informed Karmasu that, upon review of the transcript of the plea hearing, the State clearly asserted that, while it would recommend a one year term of post-release control, it had no authority to dictate those terms. The transcript in fact bears this out, as well as the fact that the trial court also informed Karmasu that he would be subject to up to three years of post-release control and that the actual term was within the sole discretion of the Adult Parole Authority.

{¶25} Finally, the trial court inquired whether Karmasu had any evidence of his actual innocence in regard to the charge of extortion. R.C. 2905.11(A)(3)/(5), with which the defendant was charged, provides: "No person, with purpose to obtain any valuable thing or valuable benefit

or to induce another to do an unlawful act, shall *** [v]iolate [R.C.] 2903.21 [aggravated menacing] or 2903.22 [menacing]; [or] [e]xpose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit." When Karmasu could not respond, the trial court asked the State to summarize its evidence of extortion. The State asserted that it had evidence that Karmasu sought to compel the victim to remain in contact with him by threatening to post embarrassing and explicit (nude) photographs of the victim, as well as sexually explicit and racially charged narratives which he created but which he portrayed as having been created by the victim, on web pages accessible to any third party. The State asserted that Karmasu in fact posted explicit pictures and fabricated first-person narratives by the victim when the victim refused to maintain contact. The State asserted that the victim's daughter was confronted by classmates who saw the images and text that appeared to have been posted by the victim and informed the victim's daughter that they were surprised to learn that her mother was "such a nympho." Finally, the State asserted that it had evidence of prior acts in which Karmasu had engaged in similar conduct involving other women with whom he had had romantic relationships which soured, thereby demonstrating his intent, ability, knowledge, and modus operandi in relation to the instant charges.

{¶26} The trial court again asked Karmasu to summarize his evidence of actual innocence. Karmasu presented a convoluted explanation, the gist of which was that the "global resolution" he had with the victim gave him permission to publish whatever he liked. He reasoned that the victim had passwords to the web sites he created so she could "clean up anything" that would presumably subject her to hatred, contempt, or ridicule; endanger her personal or business reputation; or impair her credit, so that she would have no basis to file a

criminal complaint against him. Karmasu admitted threatening the victim with legal action (presumably if she breached the terms of the "global resolution" which required that she provide Karmasu with all her current contact information) and admitted that his actions rose to the level of coercion, but he denied that they rose to the level of extortion. Finally, he attempted to impugn the reliability of the State's other acts evidence by asserting that the people involved in those situations were all ex-girlfriends, ex-wives, or their children, producing nothing more than a "gossip column for evidence."

{¶27} It is clear from the record that Karmasu was accorded an opportunity to present his arguments for withdrawing his guilty plea. The trial court found that Karmasu failed to offer a reasonable and legitimate basis for withdrawing his guilty plea. This Court agrees. Karmasu did not substantiate his claim that he must return to Summit County upon release from prison to serve any term of post-release control. He could not dispute the court's explanation that post-release control would occur in the county of a defendant's residence of his choice upon release from prison as long as any address provided by the defendant was legitimate. Moreover, Karmasu asserted that he in fact had no legitimate address in Summit County which might compel him to serve his post-release control in that county. Accordingly, Karmasu did not substantiate his claim that the State somehow reneged on its assertion that it had no objection to Karmasu's relocation outside of Summit County for purposes of serving post-release control.

{¶28} In addition, the transcript of the plea hearing does not bear out Karmasu's assertion that the State promised to effectuate a one year term of post-release control upon his release from prison. The transcript clearly demonstrates that the State was careful to assert on multiple occasions that it could only make a recommendation for a shorter period of post-release control but that it had no authority to dictate those terms.

{¶29} Finally, Karmasu had nothing to offer in support of his assertion that he was not guilty. First, he did not assert his innocence in regard to the menacing by stalking charge. Second, he relied on the terms of the "global resolution" in support of his claim that he was not guilty of extortion. He repeatedly asserted that the victim had contractually given him permission to publish anything he liked about her and that she assumed a burden to delete anything offensive. The trial court found, and this Court agrees, that the "global resolution" was void as against public policy because it purported to grant Karmasu permission to commit criminal acts. It has long been recognized that a contract whose consideration is illegal, contrary to public policy, or immoral is void. *Roll v. Raguet* (1831), 4 Ohio 400, 401. An agreement designed to contract away criminal culpability is one such type of contact. See id. at 401-402 (recognizing a moral and legal duty to take notice of criminal violations, to act to procure criminal convictions, and to avoid hindering prosecutions); see, also, *Springfield Fire & Marine Ins. Co. v. Hull* (1894), 51 Ohio St. 270, paragraph one of the syllabus (holding that "[a] contract, the consideration of which, in whole or in part, is the suppression of a criminal prosecution, is without any legal efficacy, either as a cause of action or as a defense to an action not founded on or arising out of the agreement.")

{¶30} Karmasu admitted that he attempted to coerce the victim with threats into maintaining continued contact with him, something which constituted a valuable benefit to him. He admitted that he created web sites containing the victim's information. The State informed that it had evidence that the information included nude pictures of the victim, as well as sexually and racially charged narratives which were written to seem as though the victim had written them herself. While Karmasu referred to his actions as mere "coercion," his choice of semantics does not change the fact that he exposed and threatened to expose the victim to ridicule, hatred,

contempt, and damage to her reputation by posting nude pictures and prurient narratives regarding her on multiple web sites for the purpose of compelling her to disclose her contact information to Karmasu, thereby allowing him to contact and monitor her and her minor children after their romantic relationship had soured. See R.C. 2905.11(A)(5).

**{¶31}** Based on the foregoing, this Court concludes that Karmasu failed to meet his burden to articulate a reasonable and legitimate basis for withdrawal of his presentence guilty plea. Accordingly, the trial court did not abuse its discretion when it denied Karmasu's motion to withdraw his guilty plea on that basis. Karmasu's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN ALLOWING APPELLANT KARMASU TO ENTER A PLEA THAT WAS NOT VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY ENTERED IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 5 AND 10 OF ARTICLE I OF THE OHIO CONSTITUTION."

**{¶32}** Karmasu argues that his guilty plea was not knowingly, voluntarily, and intelligently entered because he did not understand the consequences and effect of his plea. Specifically, Karmasu argues that he believed that, notwithstanding his guilty plea, he would be permitted to litigate issues of guilt and innocence at sentencing. This Court disagrees.

**{¶33}** A plea is invalid where it has not been entered in a knowing, intelligent and voluntary manner. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, at ¶25, citing *State v. Engle* (1996), 74 Ohio St.3d 525, 527. Crim.R. 11(C)(2)(a) provides:

"In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

"Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved,

and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."

{¶34} The Ohio Supreme Court has urged literal compliance with the mandates of Crim.R. 11. *Clark* at ¶29. However, in the absence of literal compliance, "reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy." Id. at ¶30.

{¶35} In addition, the Ohio Supreme Court has stated that an appellate court must look to the totality of the circumstances to determine whether a defendant entered his guilty plea in a voluntary, intelligent and knowing manner. *State v. Nero* (1990), 56 Ohio St.3d 106, 108; see also *State v. Buck*, 9th Dist. No. 04CA008516, 2005-Ohio-2810, at ¶8. The Ohio Supreme Court has further held:

> "Where the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." *State v. Piacella* (1971), 27 Ohio St.2d 92, at syllabus.

{¶36} Prior to the parties' notification to the trial court that Karmasu wished to change his plea, he had informed the court that he wished to proceed pro se. The court engaged in a lengthy colloquy with Karmasu regarding the nature of the charges and possible penalties, as well as his responsibilities during trial. That discussion is detailed above. After that discussion, Karmasu decided to proceed with the representation of counsel and further asserted that he wished to enter a plea of guilty as a result of plea negotiations. Notwithstanding the trial court's lengthy discussion with Karmasu only minutes earlier, the trial court initiated another colloquy

with the defendant to determine whether he would be knowingly, voluntarily, and intelligently entering his guilty plea.

{¶37} The trial court again advised Karmasu of the charges to which he would be pleading guilty and the potential penalties, including possible prison terms and fines. Karmasu asserted his understanding. The trial court explained to Karmasu that he faced a maximum prison term of six-and-one-half years although the State was recommending a term of six years. The defendant asserted his understanding. The trial court informed Karmasu that, upon release from any prison term imposed in this case, he would be subject to up to three years of post-release control at the discretion of the parole board and not the court. The court further explained that the parole board might decide to impose no period of post-release control or any term up to three years. Karmasu asserted, "But there is going to be a recommendation for one year." The State responded, "That's correct." The trial court emphasized that it was merely informing the defendant as to what the law provides. Karmasu asserted his understanding. The trial court explained the potential penalties Karmasu would face for a violation of any condition of his post-release control. When the trial court inquired whether he now understood the maximum potential penalties associated with the offenses to which he was proposing to plead, Karmasu responded that he did.

{¶38} The trial court then explained to Karmasu the constitutional rights he would be waiving by pleading guilty to the charges, including the right to a trial by jury, the right to force the State to prove each element of the offenses charged beyond a reasonable doubt, the right to cross-examine and confront witnesses against him, the right to compulsory process to require witnesses to testify in his own defense, the right to testify in his own defense or to refuse to testify, and the right to appeal from anything relating to his guilt or innocence. Karmasu asserted

his understanding and further asserted that no one had threatened or promised him anything in return for his guilty plea. He further asserted that defense counsel had answered all his questions and that he was satisfied with the legal representation he had received. The trial court then asked Karmasu how he wished to plead to the two charges of extortion and menacing by stalking. Karmasu answered, "Guilty."

{¶39} A review of the record reveals that counsel was present at the time Karmasu entered his guilty plea and that Karmasu had the opportunity to confer with counsel. The record demonstrates that the trial court thoroughly explained the nature of the charges, the possible penalties, the effect of a guilty plea, and Karmasu's rights. Karmasu asserted his understanding, his satisfaction with his representation by counsel, and that he wished to plead guilty. He further asserted that no one had threatened or promised him anything in exchange for his guilty plea. Furthermore, Karmasu was motivated to plead guilty by a desire to seek a lesser penalty or by fear of the consequences of a jury trial on all nine charged counts.

{¶40} Karmasu argues that he did not understand that, by entering a guilty plea, he would be precluded from presenting evidence as to his innocence at sentencing. He argues that his plea is invalid pursuant to *North Carolina v. Alford* (1970), 400 U.S. 25, because he maintained a sincere assertion of innocence while entering a guilty plea. This Court agrees with the State's response that Karmasu's reliance on *Alford* is misplaced. The record clearly demonstrates that Karmasu was specifically apprised that he was waiving the right to challenge or present evidence, as well as the right to challenge the finding of guilt on appeal, and that he asserted his understanding. Moreover, Karmasu in fact demonstrated how well he understood that the issue of his guilt or innocence was no longer before the trial court after he pleaded guilty when he later moved to withdraw that plea on the basis of his actual innocence. Had Karmasu

reasonably believed that he could litigate his guilt or innocence at sentencing, he would not have felt compelled to move to withdraw his guilty plea.

{¶41} Examining the totality of the circumstances, the record affirmatively discloses that Karmasu knowingly, voluntarily, and intelligently entered his guilty plea. See *Piacella* at syllabus. Accordingly, the trial court did not err by finding a knowing, voluntary, and intelligent waiver of rights and entering of the guilty plea. Karmasu's second assignment of error is overruled.

### III.

{¶42} Karmasu's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

J. DEAN CARRO, Director Legal Clinic, University of Akron School of Law, Office of Appellate Review, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.