JOURNAL ENTRY and OPINION
{¶ 1} Appellant William Scott appeals his conviction and sentence and assigns the following errors for our review:
 {¶ 2} "I. The trial court erred to the prejudice of the defendant-appellant when it failed to properly conduct a hearing upon defendant-appellant's presentence written motion to withdraw his plea of guilty."
 {¶ 3} "II. The trial court erred to the prejudice of the defendant-appellant when it sentenced defendant-appellant to a definite sentence of eleven total years and failed to review all of the statutory factors announced in R.C. 2929.12."
 {¶ 4} Having reviewed the facts and pertinent law, we affirm the trial court's judgment. The apposite facts follow.
 {¶ 5} On June 3, 2003, the Cuyahoga County Grand Jury indicted Scott for two counts of aggravated robbery, five counts of felonious assault on a police officer, and one count of attempted murder, all with firearm specification. Additionally, the Grand Jury indicted Scott for one count each of tampering with evidence and having a weapon while under a disability. On June 6, 2003, at his arraignment, the trial court appointed counsel to represent Scott, and Scott entered a plea of not guilty to each offense as charged. Thereafter, on two separate occasions, Scott executed waivers of his right to a speedy trial and the court scheduled the trial for November 24, 2003.
 {¶ 6} After several pretrial conferences, Scott and the State reached a plea agreement on the day of trial. Pursuant to the agreement, Scott would plead guilty to one count of aggravated robbery, with a one-year firearm specification; two counts of felonious assault on a police officer with a three-year firearm specification; attempted murder, with a three-year firearm specification; kidnaping, with a one year firearm specification; tampering with evidence; and having a weapon while under a disability.
 {¶ 7} At this time, Scott indicated that his family wanted to hire a private attorney to represent him. He stated he did not want to plead guilty to all the counts in the agreement and further, he did not understand the plea agreement. The trial court informed Scott that his private attorney would need to be present in court the following day. The trial court then explained the entire plea agreement by detailing each charge and the possible penalties. Scott stated he understood; the trial court explained Scott's constitutional rights. Finally, the trial court concluded by stating: "I don't want you to have any misunderstanding. I'm not forcing you, nor am I encouraging you, to make a plea, because you have an absolute right to have this case tried to a jury."[1]
 {¶ 8} After a brief recess, Scott's appointed attorney informed the trial court that Scott decided to enter the plea. During the recess, Scott learned that his co-defendant, Fernando Evans, had minutes earlier pled guilty and was going to testify against him at trial. The prosecutor confirmed that the co-defendant was going to testify against Scott.
 {¶ 9} Thereafter, the trial court repeated the plea agreement, detailed the charges, stated the potential penalties, and repeated Scott's constitutional rights. However, after Scott had pled guilty to several counts, the following exchange took place:
"The Court: Are you guilty of that?
 The Defendant: Can I say something your honor? I know what thedeal was, but I'm having a problem saying I'm guilty of all this,sir. You see, I'm having a problem saying I'm guilty. I know whatthe deal was but I'm having a problem saying —
Mr. Luskins: Your Honor, I have also explained to my client, pursuantto the Ohio Supreme Court of Alford versus North Carolina, that eventhough an individual in their own mind may not be factually guilty, thelegal guilt of that and the Court allowing them to take that type of pleato lessen their exposure to prison is constitutionally valid.
 The Court: Let's put it this way. He's indicated that he is having adifficult time entering a plea of guilty to these charges, and what theCourt is going — I'm not going to accept it at this time. We didn'tstart out with it being an Alford plea, which is a different plea, withdifferent warnings. The Court feels that if the defendant does not wantto enter a plea of guilty, I am not going to accept it. You have to dothis freely and voluntarily, of your own free will.
 The Defendant: I'm guilty your Honor.
 The Court: I'm not pressuring you. Do you understand that?
 The Defendant: I understand.
 The Court: All right. So then we will go back to it."[2]
 {¶ 10} Thereafter, Scott pled guilty to the remaining charges and the trial court accepted the plea. The trial court referred the matter to the probation department for a pre-sentence report and scheduled sentencing for December 15, 2003.
 {¶ 11} On December 15, 2003, Scott, through his newly retained private attorney, informed the trial court that he had filed a motion the previous Friday to withdraw his guilty plea. An affidavit was attached to the motion to withdraw wherein Scott averred that at the time he entered the guilty plea he did not understand the nature of the charges, the nature of the crimes, nor knew that he waived his constitutional rights. After conducting a hearing, the trial court denied the motion, stating there was no basis for a withdrawal of the plea, and further, Scott did not put forth any new evidence nor any new witnesses.
 {¶ 12} Subsequently, the trial court sentenced Scott to a total of eleven years in prison. Scott now appeals.
 {¶ 13} In his first assigned error, Scott argues the trial court erred when it failed to properly conduct a hearing upon the motion to withdraw his guilty plea. We disagree.
 {¶ 14} The standard of review is abuse of discretion. Although a defendant is not vested with an absolute right to withdraw a guilty plea, a motion for withdrawal made prior to sentencing is to be freely allowed and liberally treated.[3] The decision to grant or deny such a motion is fully within the trial court's discretion and shall remain undisturbed absent a showing that the trial court abused its discretion.[4] The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[5]
 {¶ 15} A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.[6]
 {¶ 16} With regard to the substantive law, in State v. Smith,[7] we held that the scope of a hearing held with regard to a presentence motion to withdraw a plea of guilty should reflect the substantive merit of the motion to withdraw, and it is within the sound discretion of the trial court subject to our review for an abuse of that discretion. This approach, we explained, strikes a fair balance between fairness for an accused and preservation of judicial resources.[8]
 {¶ 17} In his motion, Scott asserted that he wanted to withdraw his guilty plea because he did not understand the nature of the charges against him, the nature of the crimes he pled guilty to, and did not know he was waiving his constitutional and statutory rights. At the outset we note, the trial court received the motion to withdraw on Monday morning, just minutes before Scott's sentencing hearing was to begin. The motion was filed the previous Friday afternoon; therefore, the State did not have an opportunity to file a written response. Nevertheless, the trial court proceeded to conduct a hearing.
 {¶ 18} In this case, we conclude Scott entered his pleas of guilty pursuant to an agreed plea arrangement. Although Scott expressed reservations after the agreement was reached, he decided to plead guilty after he learned that co-defendant Evans had pled guilty and was going to testify against him.
 {¶ 19} Scott was represented by highly competent counsel throughout the proceedings. When Scott informed the court his family wanted to retain a private attorney for him, the trial court stated:
"Now, just for the record, for yourself, you have one of the mostexperienced trial lawyers that the court system has to offer in JohnLuskin. He's tried literally hundreds of cases. At one time he's had pastexperience in law enforcement, also. He's also been a defense lawyer formany years, has tried a lot of cases, including murder cases, capitalcases, where the death penalty was at stake, I know for a fact."[9]
 {¶ 20} Further, a full Crim.R. 11 hearing took place. The record reveals the trial court painstakingly adhered to the dictates of Crim.R. 11. The trial court advised Scott of his rights and the potential sentences that might be imposed. Repeatedly, the trial court stated he would not accept the plea if Scott did not understand or was unwilling to enter a plea. The trial court emphasized throughout that Scott did not have to enter a plea, but had every right to take the matter to trial.[10] The record reflects that the trial court asked Scott seventeen times if he understood and each time Scott said he did.[11] The record also reveals that when the trial court accepted the pleas for each individual charge, it detailed the facts of the crime and ended by asking Scott if he was in fact guilty. Each time the question was asked, Scott admitted he was guilty of the crime charged.[12]
 {¶ 21} Finally, though the motion alleges that Scott did not understand the nature of the charges against him, the nature of the crimes, the fact that he was waiving his constitutional rights, and he did not understand his statutory rights, the record belies this allegation. The trial court informed Scott of his rights, and to each statement from the court, Scott acknowledged that he understood.
 {¶ 22} We conclude that Scott's arguments in favor of withdrawing his plea viewed cumulatively amounted to little more than a mere change of heart, which is an insufficient justification to withdraw a guilty plea.[13] Thus, the trial court did not abuse its discretion in denying the motion to withdraw the guilty plea. Accordingly, the first assigned error is overruled.
 {¶ 23} In the second assigned error, Scott argues the trial court erred in sentencing him to a total of eleven years and failed to review all the statutory factors announced in R.C. 2929.12. We disagree.
 {¶ 24} The law is well-settled that we will not reverse a trial court on sentencing issues unless the defendant shows by clear and convincing evidence that the trial court has erred.[14]
 {¶ 25} When the trial court decides to impose consecutive sentences, its discretion is guarded in that it must make findings under R.C.2929.14(E)(4) and must give reasons for the findings under R.C.2929.19(B)(2)(c). The findings are: the necessity of protecting the public from future crime or to punish the offender, proportionality both as to the seriousness of the offender's conduct and danger posed to the community, and one of the statutory fact situations under R.C.2929.14(E)(4)(a),(b), or (c).
 {¶ 26} Although the court did not precisely use statutory language, we have repeatedly held that findings will suffice even in the absence of so called "magic words" as long as the court demonstrated the findings intended by the Revised Code.[15]
 {¶ 27} At Scott's sentencing hearing, Detective Cornell testified as follows:
"Again, I feel the Court will be just in sentencing Mr. Scott. I justwant to let you know that I was one of the officers that Mr. Scott shotat, and I don't think it was — how should I say it — he was trying to getaway. He didn't care what he had to do to get away, if it meant shootingat me to kill me he didn't care. And I hope the Court when sentencingcomes will take that into consideration. He was there to rob the place.He had planned it. They had ten employees that were inside the place.They had them locked up, both defendants had guns, and they were therefor one purpose; to rob, and that was it. Thank you."[16]
 {¶ 28} A Pizza Hut employee, Darrell Robinson testified as follows:
"I was one of the managers at Pizza Hut on April 25, 2003. That was thesecond person, right there, that came in the back door of ourestablishment, demanded money, also demanded if he didn't get money hewould kill us. So he also forced my employees to go in the bathroom andit was like three of us that was left out. As I was headed up front I sawthe officer right here at our establishment, it was one of ourcustomers. They thought we were closed. We wasn't, our doors was [sic]just locked. One of the customers saw what was being in progress andcontacted the police."[17]
 {¶ 29} The trial court proceeded to review Scott's presentence report, which indicated Scott took part in the armed robbery of a Pizza Hut as described by Cornell and Robinson above. The report also highlighted Scott's long criminal history. The court stated:
"The defendant is a recidivist, he's a likely recidivist. He servedtime in a penal institution before, he's not responded well at pastattempts at rehabilitation, he has been a probation violator before.
 The Court further finds for purposes of Senate Bill Two that theshortest term would demean the seriousness of defendant's conduct andwould not adequately protect the public and consecutive terms arenecessary to protect the public and to punish the defendant, and that theterms I set forth here today are not disproportionate to the seriousnessof defendant's conduct and the danger that the defendant poses to thepublic. And that his past history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public from futurecrime and punishing the defendant."[18]
 {¶ 30} Our review of the record reflects the trial court made the three required findings. First, the court found recidivism was likely and the sentence was necessary to protect the public. Second, the court reviewed Scott's conduct and the danger he posed and found the sentence provided an adequate punishment. Third, the court commented on Scott's criminal history and lack of rehabilitation and determined the sentence was necessary to protect the public.
 {¶ 31} While the trial court's findings did not mimic the exact language of R.C. 2929.14(E)(4), the statute does not require the trial court to recite its exact words to impose consecutive sentences.[19]
Moreover, we have previously recognized that R.C. 2929.14(E)(4) is satisfied when we can glean from the tenor of the trial court's comments, its findings, and the evidence that imposition of consecutive sentences is justified.[20]
 {¶ 32} We also find that the trial court sufficiently set forth the reasons for imposing consecutive sentences pursuant to R.C.2929.19(B)(2)(c). There is no predetermined format a trial court must follow in setting forth the reasons for its findings pursuant to R.C.2929.19(B)(2)(c).
 {¶ 33} As we stated in State v. Webb:[21]
 "Although the court did not specifically state the findings first andthen relate its reasons to the findings, there is no obligation to do soin the sentencing statutes. The sentencing statutes do not put anobligation upon the lower court to provide the statutory findings and itsreasons in such close proximity on the record in order for the reasons tobe of effect."
 {¶ 34} Rather, the ability to clearly align the findings and reasons for consecutive sentences must be apparent from the record as a whole.
 {¶ 35} In this case, the trial court detailed its reasons for imposing consecutive sentences throughout its findings. The trial court detailed how Scott and co-defendant Evans were tipped off by a Pizza Hut employee regarding the best time to rob the restaurant. How Scott and Evans entered the Pizza Hut and at gun point ordered the employees and customers into the bathrooms, where they locked the doors behind them. They then ordered the manager to open the safe, but the manager was unable to open the safe, because of the time lock feature. Scott and Evans proceeded to pistol-whip the manager and another employee. Scott and Evans started to flee when the police arrived on the scene. Scott fired a nine millimeter semiautomatic weapon at the police. After Scott fired the first shot, the gun jammed. The police responded by returning fire. Scott was apprehended at the scene.
 {¶ 36} The court also reasoned that in the present case Scott engaged in a gunfight with the police, was combative, and caused physical harm. The court found recidivism was likely and reasoned Scott was a career criminal. The court also expressed concern that though Scott had served time in a penal institution, he has not been rehabilitated. These reasons were all related to the findings on the record.
 {¶ 37} Upon our review of the record, we find the trial court complied with the sentencing statutes in imposing the sentence. Accordingly, the second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, J., and Corrigan, J., concur.
[1]Tr. at 34.
[2] Tr. at 56-57.
[3] State v. Xie (1992), 62 Ohio St.3d 521; State v. Peterseim (1980),68 Ohio App.2d 211, quoting Barker v. United States (1978),579 F.2d 1219.
[4] Xie; Peterseim.
[5] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[6] Peterseim, paragraph three of the syllabus.
[7] (Dec. 10, 1992) Cuyahoga App. No. 61464.
[8] Id.
[9] Tr. at 30-31.
[10] Tr. at 34.
[11] Tr. at 46-53.
[12] Tr. at 53-62.
[13] State v. Drake (1991), 73 Ohio App.3d 640; State v. East (Mar. 22, 2001), Cuyahoga App. No. 77877.
[14] R.C. 2953.08(G)(1); State v. Hollander (July 5, 2001), Cuyahoga App. No. 78334; State v. Haamid (June 21, 2001), Cuyahoga App. No. 78761.
[15] See State v. Ohler, 2002-Ohio-3899, Cuyahoga App. No. 79740; Statev. Smith (2001), 136 Ohio App.3d 343; State v. Nichols (Aug. 19, 1999), Cuyahoga App. Nos. 74732 and 74733.
[16] Tr. at 74.
[17] Tr. at 75.
[18] Tr. at 87.
[19] State v. Ebbing (Nov. 3, 2003), Clermont App. No. CA2003-05-041.
[20] See State v. Kessler (Nov. 13, 2003), Cuyahoga App. No. 82956;State v. Robinson (Mar. 20, 2003), Cuyahoga App. No. 81610.
[21] (April 3, 2003), Cuyahoga App. No. 80206.