OPINION.
{¶ 1} The defendant-appellant, Fred Calloway, appeals from his conviction, following a guilty plea, for aggravated possession of drugs in violation of R.C. 2925.11. In his four assignments of error, he contends that (1) the trial court abused its discretion when it denied his motion to withdraw his guilty plea; (2) the trial court erred when, prior to accepting his plea, it overruled his motion to suppress; (3) his guilty plea was not knowingly and voluntarily entered; and (4) he was denied the effective assistance of counsel. We hold that Calloway voluntarily entered his guilty plea and that the trial court did not abuse its discretion in overruling his Crim.R. 32.1 motion to withdraw it. Further, we hold that his guilty plea effectively waived any arguments regarding the constitutionality of the search resulting in the charge against him, and that he was not denied the effective assistance of counsel.
 {¶ 2} On September 26, 2002, after receiving information supplied to police by a confidential informant that Calloway and his wife had been selling drugs in the alley at 1703 Elm Street in Cincinnati, Vice Squad Lt. Robert Ruebusch and officers in uniform responded to that location. According to the transcript of the hearing on Calloway's motion to suppress, Lt. Ruebusch questioned Calloway's wife as she left Martin's Bar. She admitted having marijuana. Lt. Ruebusch then obtained an automobile key from her and tried it in cars parked nearby on the street. The key fit the lock of a black Ford Taurus. Although Calloway's wife denied that the Taurus was her automobile, officers learned that it was registered to her as the owner. She later admitted to police that the automobile was hers.
 {¶ 3} Calloway was then seen by the police officers in the alley at the corner of Elm Street. He fit the description given by the informant, and Lt. Ruebusch testified that he already knew and recognized Calloway. Lt. Ruebusch stated that when he first saw him, he thought that Calloway was discarding something from his back right pocket. A search of the ground around him, however, did not produce any substances. Lt. Ruebusch detained Calloway by the arm despite Calloway's denial of his identity. After Calloway attempted to pull away, Lt. Ruebusch handcuffed him.
 {¶ 4} When police officers searched the locked glove compartment in the Taurus, they found seven oxycodone (Percocet) tablets, a Schedule II substance, on top of Calloway's wallet. Calloway denied having access to the automobile, although he was found to be carrying a key that police used to unlock the automobile and the glove compartment. Police officers also recovered $663 from Calloway's person.
 {¶ 5} On December 8, 2003, after the trial court had overruled Calloway's motion to suppress the oxycodone seized by police from the glove compartment, as well as his statements made to police, he entered a guilty plea to aggravated possession of drugs. Before accepting Calloway's guilty plea, the trial court observed that he and his counsel had entered into a plea bargain. The trial court explained that Calloway had agreed with the prosecutor that if he assisted Lt. Ruebusch during the period he was released on bond awaiting sentence, the trial court would sentence him to a communitycontrol sanction. But the court advised Calloway that if he did not provide satisfactory assistance, the court would impose a sentence of a six-month prison term. The state further agreed that the $663 seized from Calloway by police would not be forfeited and would be returned to him. The trial court set January 12, 2004, for sentencing.
 {¶ 6} Calloway was subsequently arrested on new charges (they are not in the record) for which he was unable to make bail. He next appeared before the trial court, represented by three attorneys, on January 21, 2004. At that time, one of his attorneys advised the trial court that Calloway had informed him that he wished to withdraw his guilty plea because the state had filed a forfeiture proceeding contrary to the original plea bargain. The prosecutor advised that the forfeiture had been filed in error and had been dismissed. Counsel for Calloway then requested a continuance to confer further with Calloway because Calloway had indicated that he still wanted to withdraw his guilty plea. The trial court continued the case for sentencing until January 29, 2004.
 {¶ 7} At the hearing on January 29, 2004, Calloway's counsel relied on a written motion and memorandum to withdraw his guilty plea. The motion and memorandum now asserted Calloway's innocence and maintained that he had entered a guilty plea because his wife had terminal cancer and he had wanted to avoid incarceration during her final days. In support of the motion to withdraw the guilty plea, Calloway's counsel told the trial court that Calloway had been cooperating with police as instructed, but had been arrested by police officers who were unaware that he was cooperating with police under the terms of his plea bargain. He claimed that his plea bargain was a defense to the new charges, which should be tried along with the original charge. Calloway told the trial court that Officer Ruebusch had failed to adequately provide for his protection while he was working undercover for the police.
 {¶ 8} In response, the prosecutor told the court that Calloway had been arrested on "new charges, not at all related to any type of work that he would be doing with the police." According to the prosecutor, Calloway was facing a new aggravated-robbery charge "for trying to reach and grab for the gun of other police officers" who had seen him involved in what "looked like a sale of drugs."
 {¶ 9} The trial court overruled Calloway's Crim.R. 32.1 motion to withdraw his guilty plea. When he exercised his right of allocution under Crim.R. 32(A)(1), Calloway told the trial court, "Your Honor, I got a, you know, serious problem with drugs. * * * And I really need some therapy though, you know. Penitentiary ain't done me no good." The trial court sentenced Calloway to a six-month prison term and imposed a six-month driver's license suspension. The record demonstrates that he has now served the six-month prison term.
 {¶ 10} Crim.R. 32.1 states, "A motion to withdraw a plea of guilty or no contest may be made before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."
 {¶ 11} Unlike the "manifest injustice" standard governing a post-sentence motion, Crim.R. 32.1 has no specific guidelines for granting a presentence motion to withdraw a guilty plea. Statev. Xie (1992), 62 Ohio St.3d 521, 526, 584 N.E.2d 715. The Ohio Supreme Court has observed that a presentence motion to withdraw a guilty plea should be freely and liberally granted. Id. The decision, however, is left to the trial court's sound discretion. Id. at 526, 584 N.E.2d 715. A defendant who enters a guilty plea has no absolute right to withdraw his plea before sentencing. Id. at 527, 584 N.E.2d 715. "Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. Review of the trial court's decision is not de novo. Id. But an appellate court may reverse the denial of a presentence motion to withdraw a guilty plea if the trial court acted "unjustly or unfairly." Id. at 526, 584 N.E.2d 715.
 {¶ 12} When a defendant asserts a claim of innocence as the reason for withdrawing a guilty plea before sentence, the trial court must compare the interests of and potential prejudice to each party. See State v. Cuthbertson (2000),139 Ohio App.3d 895,900-901,746 N.E.2d 197. We have held, and it appears to be generally accepted by other appellate districts, that the relevant factors to be considered by the trial court in determining whether to grant a presentence motion to withdraw a guilty plea include whether (1) the defendant was represented by highly competent counsel; (2) the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) the trial court has conducted a full and impartial hearing on the motion to withdraw the plea; (4) the trial court has given full and fair consideration to the motion; (5) the motion was made within a reasonable time; (6) the motion sets out specific reasons for the withdrawal; (7) the defendant understood the nature of the charges and possible penalties; (8) the defendant is possibly not guilty of the charges or has a complete defense to the charges; and (9) the state would be prejudiced by withdrawal of the plea. State v. Fish (1995),104 Ohio App.3d 236, 240, 661 N.E.2d 788; see, also, Cuthbertson, supra.
 {¶ 13} Based on the record, we cannot conclude that the trial court abused its discretion in denying Calloway's motion to withdraw his guilty plea. The trial court conducted a full and impartial hearing before overruling Calloway's motion. In its decision, the trial court specifically weighed the facts presented at the hearing against each of the Fish factors, and it stated for each why there was no support for granting his presentence Crim.R. 32.1 motion. When Calloway had entered his guilty plea, two experienced attorneys were in court representing him. In their presence, the trial court scrupulously informed Calloway of his constitutional and nonconstitutional rights under Crim.R. 11(C), as well as the terms of his plea bargain with the state. The trial court's colloquy with Calloway was more than sufficient to ensure that he had entered his guilty plea voluntarily and intelligently. Calloway's argument that the trial court had a duty to inform him about the consequences of his plea agreement if his attempts to cooperate failed through no fault of his own has no merit whatsoever. His answers to the trial court's questions, before it accepted his guilty plea, showed that Calloway fully understood and approved the terms of the plea bargain, including the imposition of a six-month prison term if he breached his agreement.
 {¶ 14} Concededly, the state offered little to persuade the trial court that it would be prejudiced if Calloway were allowed to withdraw his plea. The trial court's finding that prejudice might occur to the state if Calloway was allowed to withdraw his guilty plea, because the delay could affect the witnesses' memory, was simply speculation, as the trial court acknowledged. But other than the bare statement by his counsel in his written motion that he was innocent, Calloway made no substantive claim of innocence. Neither did he try to establish that his guilty plea had been coerced at the hearing on his motion to withdraw the guilty plea. He claimed only that the agreement that he assist Lt. Ruebusch had led to the offenses for which he was subsequently arrested.
 {¶ 15} In short, there is nothing in the record to indicate that Calloway had pleaded guilty to a crime he did not commit. Absent facts or inferences to justify his claim of innocence to the offense, the trial court was entitled to conclude that Calloway's plea was an admission of his guilt. "[A] guilty plea, absent an assertion of innocence, is an admission of guilt."State v. Griggs, 103 Ohio St.3d 85, 2004-Ohio-4415, ___ N.E.2d ___, ¶ 14. See, also, State v. Stumpf (1987), 32 Ohio St.3d 95,104, 512 N.E.2d 598
 {¶ 16} Calloway argues that the trial court's statement that it had viewed his motion to withdraw his plea as an attempt to "play the system" was not a valid reason for overruling his motion under Crim.R. 32.1. The trial court also noted, however, that this observation was not its reason for overruling the motion. Instead, the trial court correctly weighed the circumstances surrounding Calloway's guilty plea and balanced the interests of and the prejudice to him and the state by applying the factors in Fish. It concluded that, based upon what had been presented at the hearing Calloway's belated claim of innocence was no more than a "bald assertion" that it clearly found to be manipulative and unpersuasive.
 {¶ 17} In sum, the record does not demonstrate that the trial court's decision to overrule Calloway's presentence motion to withdraw his guilty plea under Crim.R. 32.1 was "unreasonable, arbitrary, or unconscionable." State v. Xie, supra, at 527,584 N.E.2d 715. We, therefore, overrule Calloway's first and third assignments of error.
 {¶ 18} In his fourth assignment of error Calloway argues that his counsel's failure to pursue an evidentiary hearing and to subpoena Lt. Ruebusch at the hearing on his motion to withdraw his plea constituted ineffective assistance of counsel.
 {¶ 19} To demonstrate ineffective assistance of trial counsel, a defendant's burden is to show (1) that his trial attorney's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. See Strickland v. Washington (1984),466 U.S. 668, 694, 104 S.Ct. 2052; see, also, State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258; State v. Powell (1993), 90 Ohio App.3d 260,629 N.E.2d 13. In Lockhart v. Fretwell (1993), 506 U.S. 364, 369,113 S.Ct. 838, the United States Supreme Court, citing Strickland v.Washington, supra, held that a showing of prejudice does not depend solely on whether the outcome of the trial would have been different but for counsel's error, but whether "counsel's performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." The same two-prong test applies to claims resulting from guilty pleas. See Hill v. Lockhart
(1985), 474 U.S. 52, 58, 106 S.Ct. 366.
 {¶ 20} As the state correctly argues, even had Lt. Ruebusch been present and testified that Calloway had been cooperating and working hand-in-hand with police when arrested, his attempt to take an officer's gun would itself have violated the terms of the plea bargain. Accordingly, we hold that counsel's efforts were not deficient and that Calloway was not prejudiced in any way. The fourth assignment of error is overruled.
 {¶ 21} Finally, Calloway challenges the trial court's order overruling his motion to suppress on grounds that there was a lack of corroboration for the informant's tip and a lack of reasonable suspicion for an investigative stop. A defendant who enters a voluntary guilty plea while represented by competent counsel waives the right to appeal all nonjurisdictional defects in the proceedings. See Ross v. Court (1972),30 Ohio St.2d 323,324,285 N.E.2d 25. Having held that the trial court did not abuse its discretion when it overruled Calloway's motion to withdraw his guilty plea, we conclude that his second assignment of error is without merit.
 {¶ 22} The judgment of the trial court is affirmed.
Judgment affirmed.
Winkler, P.J. and Hildebrandt, J., concur.