DECISION *Page 2 
{¶ 1} Defendant-appellant Larry Sykes appeals from the judgment of conviction entered upon his guilty plea to aggravated vehicular assault. We reverse his conviction upon our determination that the trial court abused its discretion when it overruled his presentence motion to withdraw his plea.
 I. Procedural Posture {¶ 2} In July of 2005, a Hamilton County grand jury indicted Sykes for aggravated vehicular assault and vehicular assault. On January 23, 2006, Sykes entered a guilty plea to vehicular assault in exchange for the dismissal of the aggravated-vehicular-assault charge. Following a hearing, the trial court accepted the plea, found Sykes guilty, and continued the matter to February 27 for sentencing.
 {¶ 3} On February 8, two weeks after the plea hearing and three weeks before the date set for sentencing, Sykes moved to withdraw his guilty plea. On February 27, following a hearing, the trial court overruled the motion. The court then entered judgment dismissing the aggravated-vehicular-assault charge and sentencing Sykes for vehicular assault to three years of community control. This appeal followed.
 II. Sykes's Motion to Withdraw his Guilty Plea {¶ 4} In the sole assignment of error presented on appeal, Sykes contends that the common pleas court abused its discretion in overruling his motion to withdraw his guilty plea. We agree.
 {¶ 5} Crim.R. 32.1 permits a criminal defendant to move to withdraw a guilty plea before he is sentenced. Neither the rule nor case law confers an absolute right to withdraw a plea before sentencing. But the Ohio Supreme Court has *Page 3 
declared that "a presentence motion to withdraw a guilty plea should be freely and liberally granted."[1] The motion requires the trial court to conduct a hearing to determine "whether there is a reasonable and legitimate basis for the withdrawal of the plea."[2] This determination is committed to the sound discretion of the trial court and may not be disturbed on appeal in the absence of some demonstration that the court abused its discretion.[3]
 A. The Hearings {¶ 6} We note as a preliminary matter that the indictment alleged that Sykes, "while operating * * * a motor vehicle, * * * caused serious physical harm to Sylvester Tatum, Jr.," both "recklessly" and "as the proximate result of committing a violation of [R.C. 4511.19(A)]." The bill of particulars provided by the state in discovery and the state's recitation of the facts at the plea hearing essentially tracked the language of the indictment. Thus, the specifics of the events leading to the charges against Sykes can only be gleaned from the transcripts of the proceedings at the plea, motion, and sentencing hearings.
 {¶ 7} At the January 23 plea hearing, the trial court first addressed the "suggestion that [Sykes] would like to teach elementary school in the future." The court reminded Sykes that he had a 1994 conviction for driving under the influence of alcohol that he could neither expunge nor seal, and that he would always have a felony record. The court then proceeded through the Crim.R. 11 colloquy. Before the court accepted the plea, Sykes acknowledged his understanding that his plea was a *Page 4 
complete admission of guilt to the charge and expressed satisfaction with his counsel's representation.
 {¶ 8} In his February 8 motion to withdraw his guilty plea, Sykes asserted that his "experience in the real world [had] contradict[ed] advice he [had] received in making [the] plea regarding his ability to get a job in the social work profession and/or in education." At the February 27 hearing on the motion, Sykes's counsel expanded upon the motion's somewhat cryptic statement of his reasons for seeking to withdraw his plea. Counsel stated that post-plea discussions with court personnel and with a police officer had convinced Sykes that he should not have been charged with a felony. According to counsel, Sykes admitted that he had lost control of his car when he reached to stop his fast-food order from sliding off the car seat. And he conceded that his car had struck a large planter located close to the curb. But counsel's investigation showed that four utility poles, a "city water plug," and the planter would have prevented Sykes's car from striking the alleged victim. Counsel also asserted that she had only recently gained parental permission for two teenage eyewitnesses to testify on Sykes's behalf. These witnesses, counsel asserted, would testify that the alleged victim, Sylvester Tatum, Jr., had not been present when Sykes's car had hit the planter.
 {¶ 9} Sykes also spoke at the hearing. He conceded that he had lost control of his car, but he stated that he did not believe that he had hit anyone. He asserted that he had agreed to plead guilty because, with the charges pending, he was struggling financially, and he wanted to "get this out of the way, start [his] life back over * * * [and] get a job back." He stated that he had been confused by the trial court's reference at the plea hearing to "elementary school," and that he had believed *Page 5 
that a fourth-degree-felony conviction would not preclude him from teaching in secondary school. Shortly after the plea hearing, Sykes interviewed for a job with a social-services organization. When he learned that his felony conviction would preclude the organization from hiring him, he decided to fight the charges.
 B. The Factors {¶ 10} The determination of a presentence motion to withdraw a guilty plea is discretionary with the court. But the court's exercise of its discretion should be informed by all relevant factors, including (1) whether the accused has been represented by highly competent counsel; (2) whether the court, in accepting the plea, fully complied with Crim.R. 11; (3) whether the accused otherwise understood the nature of the charges and possible penalties; (4) whether the accused moved to withdraw his plea within a reasonable time and with sufficient specificity; (5) whether the hearing on the motion has afforded the accused a full and fair opportunity to present his case for withdrawal; (6) whether the accused is possibly not guilty of, or can offer a complete defense to, the charges; and (9) whether allowing the accused to withdraw his plea would prejudice the state.[4]
 {¶ 11} With a nod to these factors, the court below overruled Sykes's motion. The court found that Sykes had been represented by "experienced counsel," albeit after admonishing counsel that she should have more thoroughly investigated the charges before counseling the plea. The court also found that it had "complied with [Criminal] Rule 11 over and above what [was] required." And the court found that Sykes had been capable of understanding what had been communicated to him *Page 6 
because, unlike those defendants who appeared with "public appointed counsel and * * * anywhere from a seventh to twelfth grade education at best," Sykes was "college educated" and had been represented by "experience[d], privately retained counsel." Finally, the court did not acknowledge Sykes's claim of innocence. It instead characterized his motivation for wanting to withdraw his plea as "buyer's remorse," and it overruled the motion upon its "belief that Mr. Sykes [had] entered [his] plea knowingly, intelligently and voluntarily."
 {¶ 12} The knowing, voluntary, and intelligent nature of a guilty plea is but one factor to be considered in determining whether a defendant has shown a reasonable and legitimate basis for withdrawing his guilty plea. And when, as here, the defendant advances a claim of innocence as his reason for withdrawing his plea before sentence, the trial court must compare the interests of and potential prejudice to each party.[5]
 {¶ 13} Sykes had a constitutional right to have his guilt with respect to the charged offenses determined at a trial.[6] At that trial, the state would bear the burden of proving each element of the charged offenses beyond a reasonable doubt.[7]
 {¶ 14} The state in its appellate brief concedes that it "would likely have little trouble in re-preparing to remake its case against Sykes." The state instead predicates its claim of prejudice upon the trial court's finding that Sykes, unlike (presumably) most criminal defendants, was "college educated" and had been represented by "experience[d], privately retained counsel." The state reasons that, *Page 7 
because Sykes was intelligent and college-educated, allowing him to withdraw his plea "would [have] undermine[d] the certainty of virtually every plea that any defendant were to ever enter * * * ."
 {¶ 15} We accept the state's assertion that it has an interest in not "undermin[ing] the certainty of virtually every plea that any defendant were to ever enter * * * ." But again, the knowing and intelligent nature of a guilty plea is only one factor to be considered in determining a presentence motion to withdraw the plea. And we reject as illogical the state's assertion that allowing a well-educated and well-represented defendant to withdraw his plea would undermine the integrity of the plea procedure itself.
 {¶ 16} The record before us shows that the trial court, in accepting Sykes's plea, fully complied with Crim.R. 11 and went beyond the Crim.R. 11 requirements to address Sykes's concerns about the effects of a felony conviction upon his employment prospects. But the record also supports Sykes's claim that, in entering his plea, he had been mistaken about those prospects. And it shows that the court, in determining Sykes's motion to withdraw his plea, had mistakenly focused exclusively on the plea's knowing, voluntary, and intelligent nature.
 {¶ 17} On this record, Sykes's claim of innocence cannot be said to be demonstrably specious. Allowing him to withdraw his guilty plea before sentencing would have restored to him his constitutional right to put the state to its proof at a trial on the charged offenses. And restoring this right before sentence, and within a month of entering the plea, would not, as the state concedes, have prejudiced the state's case against Sykes. We hold that, under these circumstances, the trial court abused its discretion in denying Sykes's motion to withdraw his guilty plea. *Page 8 
 III. We Reverse {¶ 18} We, therefore, sustain the assignment of error, reverse the judgment of conviction entered upon the plea, and remand this case to the trial court for further proceedings consistent with the law and this decision.
Judgment reversed and cause remanded.
PAINTER, P. J., HENDON and CUNNINGHAM, JJ.
[1] See State v. Xie (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, and paragraph one of the syllabus.
[2] Id., paragraph one of the syllabus.
[3] Id., paragraph two of the syllabus.
[5] See State v. Calloway, 1st Dist. No. C-040066, 2004-Ohio-5613, at ¶ 12, citing State v. Cuthbertson (2000), 139 Ohio App.3d 895, 899-900,746 N.E.2d 197.
[4] See State v. Fish (1995), 104 Ohio App.3d 236, 240,661 N.E.2d 788; accord State v. Calloway, 1st Dist. No. C-040066,2004-Ohio-5613
[6] See Section 2, Article III, United States Constitution;Sixth Amendment to the United States Constitution; Section 10, Article I, Ohio Constitution.
[7] See R.C. 2901.05. *Page 1