OPINION
{¶ 1} Defendant-appellant, Timothy L. Dingess, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion to withdraw his guilty plea pursuant to Crim.R. 32.1. Defendant assigns a single error:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA BEFORE SENTENCING PURSUANT TO CRIMINAL RULE 32.1. *Page 2 
Because the trial court did not abuse its discretion in denying defendant's presentence motion to withdraw his guilty plea, we affirm.
 {¶ 2} According to the summary of evidence presented at defendant's plea hearing, Marla Ross and David Bernot were in Ross' home on Dexter Avenue in the early morning hours of June 18, 2006. At some point, defendant appeared at the home, looking for his girlfriend. Apparently believing that Ross, his sister, was withholding information about his girlfriend's whereabouts, defendant became enraged and threatened to burn his sister and Bernot. He left the apartment and returned with a gas can. As he shook the can back and forth, gas splattered onto his sister. When he ignited a lighter, the fumes caught flame and engulfed his sister. Bernot attempted to douse the fire that was consuming Ross, as did defendant. As a result of the incident, Ross suffered third-degree burns over 35 percent of her body and endured a medically-induced coma for four weeks. According to the summary, she continued to suffer various procedures to deal with the results of the injury.
 {¶ 3} The incident gave rise to a six-count indictment filed August 4, 2006 against defendant. In the indictment, defendant was charged with one count of aggravated arson in violation of R.C. 2909.02, a first-degree felony, one count of attempted murder in violation of R.C.2923.02 as it relates to R.C. 2903.02, a first-degree felony, and one count of felonious assault in violation of R.C. 2903.11, a second-degree felony. In addition, the indictment charged one count of robbery in violation of R.C. 2911.01, a first-degree felony, and two counts of robbery in violation of R.C. 2911.02, one a second-degree felony and the other a third-degree felony. *Page 3 
 {¶ 4} On August 9, 2006, defendant entered a not guilty plea, and the court subsequently appointed counsel for defendant. Following several continuances, defendant's case was scheduled for trial on May 29, 2007. Prior to trial, defendant reached a plea agreement with the prosecution. After the prosecution dismissed all three robbery counts for lack of evidence, it agreed to accept a guilty plea to the first and third counts of the indictment, aggravated arson and felonious assault, in exchange for which it would dismiss the second count charging attempted murder.
 {¶ 5} The trial court conducted an extensive Crim.R. 11 hearing to determine whether defendant was entering the plea knowingly, intelligently, and voluntarily. After inquiry of both defendant and defendant's counsel, the court accepted defendant's guilty plea. Although indicating defendant had a considerable criminal record, the trial court requested a presentence investigation.
 {¶ 6} At the same time the court noted Ross, the victim, earlier was present in the courtroom, and the court stated it wanted to be sure she concurred in the plea agreement reached in defendant's case. When the prosecution advised that she agreed, the court commented she could make a statement at that time or, if she would prefer to wait, she could make a statement at the time of sentencing. The prosecution explained that Ross decided to leave for the day and to consider whether to come back for the sentencing and make a statement at that time.
 {¶ 7} On June 19, 2007, the date of defendant's sentencing hearing, the trial court summarized defendant's concern about the authenticity of a typed statement, submitted to the court, that purported to be Ross' statement. Allowing defendant's *Page 4 
attorney to explain what steps were taken to explore the authenticity of the statement, defense counsel advised that he telephonically spoke with the victim. Defense counsel stated he "basically asked her whether or not she was the author of the contents of that letter, and we really only went to the last paragraph of it and asked her if that was hers and asked if those were her words." (Tr. 5.) According to defense counsel, Ross "indicated to me and to the others present that it was, and also indicated that that is how she felt on most days." Id.
 {¶ 8} The trial court noted the conversation with Ross resolved the questions over the authenticity of her statement. The court, however, also acknowledged "some remaining questions that this statement may be inconsistent with some of the things that she has expressed on other occasions." (Tr. 6.) The court allowed defendant to explain his concern that, in his numerous conversations with the victim, she did not say the things contained in her statement. Accusing others of manipulating his sister, defendant asked the court to "have my sister come in and hear what she has to say personally, would be what I would like before I am sentenced or anything, sir." Id. at 7.
 {¶ 9} In response, the trial court advised it could do nothing appropriate to force defendant's sister to be at court, to clarify her statement or to make a different statement. All counsel agreed with the court's statement of the law, but defense counsel advised that Ross' statement diverged considerably from conversations he had with her. The court acknowledged that an injury like the one the victim sustained would cause her to have good and bad days that could result in inconsistent reactions. The court, however, stated that "with respect to the statement, I think that I will consider the statement. It is hers, and *Page 5 
I will consider what you have had to say and what has been said by your lawyer and the possibility that she may have felt differently on other days, and she may have expressed inconsistent views on other occasions. But this is what we have here today * * *." (Tr. 9.)
 {¶ 10} Directing its question to defendant, the trial court asked if he was ready to proceed. Defendant responded, "Yes. I would like to withdraw my guilty plea and go to trial then, sir, so that at least you can hear straight from her." (Tr. 10.) The court asked whether "that is the only reason for your desire to do that?" Id. Defendant responded with a lengthy answer, in course of which he explained he "would have never pled out to this case, to those two charges, except for knowing that she would be here to speak on her own regardless of what she was going to say." Id. at 11. Defendant concluded by stating, "I just think she has been manipulated into — she didn't sign that letter, and I know she didn't write it. I know that is not her, and I would just like for the Court to be able to see that. That is why I would like to withdraw my plea and take this to trial." Id. The court again inquired whether defendant had "any other reasons, or is that it? That is it?" Defendant responded, "Yes, sir." Id.
 {¶ 11} At that point, the trial court reminded defendant of the lengthy inquiry conducted at his plea hearing on May 29. The court noted defendant had no questions beyond what was covered at the time, was satisfied with and in agreement with the plea, and understood it all. Defendant responded that he questioned some of it and even then was concerned about his sister being present. Convinced that his sister did not feel the way her statement read, he expressed his belief that "they are keeping her away from here, okay, and manipulating the situation with that letter. And because I know my sister *Page 6 
doesn't feel that way, because everything that happened was an accident, not intentional, and I would just like my chance to prove that to the Court, that it be said instead of a letter like that, that I know that didn't come from her, and I know that is not from her." (Tr. 12-13.)
 {¶ 12} The court overruled defendant's motion, concluding defendant presented no basis to support it. The court stated it was "satisfied that you fully understood everything in the proceedings on May 29th, that you fully understood your rights, that you have no reason for seeking to withdraw your plea, other than the personal participation of the victim to make a statement at sentencing, and that is something that you simply can't — there is no basis for your insisting on that." As the court explained, "[a]ny such statement would go only to mitigation or consideration at sentencing and not to any of the elements of the offense to which you admitted guilt and pled guilt." (Tr. 16.)
 {¶ 13} The court then heard statements from both the prosecution and defendant. Before reading his written statement, defendant stated "all of the facts aren't being presented like I wanted, like they would be if there was a trial, at least the facts would be presented and everybody would know that this was, it was just a terrible accident, unintentional. I never ever meant to hurt my sis." (Tr. 26-27.) He ultimately stated he was "very, very sorry, and I wish I could go back and change things * * *." Id. at 30. The trial court sentenced defendant to ten years on the aggravated arson count to be served with the eight years the court imposed on the felonious assault charge.
 {¶ 14} In his single assignment of error, defendant contends the trial court erred in not granting his motion to withdraw his guilty plea. "A motion to withdraw a plea of guilty *Page 7 
or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. While the rule provides a standard of manifest injustice regarding post-sentence motions to withdraw a guilty plea, it provides no guidelines for the trial court in ruling on a presentence motion to withdraw a guilty plea. State v. Xie (1992),62 Ohio St.3d 521. "Even though the general rule is that motions to withdraw guilty pleas before sentencing are to be freely allowed and treated with liberality, * * * still the decision thereon is within the sound discretion of the trial court." Id. at 526, quoting Barker v. UnitedStates (C.A.10, 1978), 579 F.2d 1219. As a result, "unless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion. * * * One who enters a guilty plea has no right to withdraw it. It is within the sound discretion of the trial court to determine what circumstances justify granting such a motion." Id.
 {¶ 15} "The assertion of innocence is not per se a sufficient reason to withdraw a guilty plea even where the motion to withdraw is made prior to sentencing." State v. Calhoun (Aug. 19, 1982), Franklin App. No. 81AP-672, citing States v. McKoy (D.C. Cir. 1981), 645 F.2d 1037. Courts generally apply several factors in resolving a motion to withdraw a guilty plea: (1) whether the accused is represented by highly competent counsel; (2) whether the accused was afforded a full hearing, pursuant to Crim.R. 11, before the plea was entered; (3) whether, after the motion was filed, the accused had a complete and impartial hearing on the motion; and (4) whether the record reveals the trial court gave full and fair consideration to the withdrawal request. State v.Brown, Greene App. No. 2003-CA-69, 2004-Ohio-6787, at ¶ 10. Courts also consider the timing of the *Page 8 
motion to withdraw, the reasons given for the withdrawal, the defendant's understanding of the charges and the penalties accompanying them, whether a meritorious defense exists, and any prejudice to the state and its witnesses if the motion is granted. State v. Boyd (Oct. 22, 1998), Franklin App. No. 97APA12-1640, dismissed, appeal not allowed (1999), 85 Ohio St.3d 1424.
 {¶ 16} Here, the trial court twice asked defendant why he wanted to withdraw his guilty plea. The first time he explained at some length, stating he "would never have pled out to this case" unless he knew "that she would be here to speak on her own regardless of what she was going to say." (Tr. 11.) When again asked whether he had any other reasons, again defendant responded that was his only reason. As the trial court properly observed following a full inquiry of defendant and his counsel, defendant's reason for wanting to withdraw his guilty plea addressed mitigation and sentencing rather than his guilt on the offenses charged. Because defendant has no right to require the victim to be present at a sentencing hearing, his reason for wanting to withdraw his plea is insufficient in the absence of some other factor to support the motion.
 {¶ 17} Specifically, defendant did not contend, and nothing suggests, defendant's attorney was anything but competent. The trial court conducted an extensive Crim.R. 11 hearing at the time defendant entered his plea, questioned defendant and defense counsel at length about defendant's desire to enter a guilty plea, and accepted the plea only after it was convinced defendant understood the proceedings. Similarly, the trial court conducted a thorough inquiry of defendant regarding his reasons for wanting to withdraw his plea. When the court ascertained defendant's only reason was his sister's *Page 9 
absence during sentencing, the court had no cause to conduct an evidentiary hearing, as the issue was not subject to evidentiary proof. It nonetheless allowed defendant to explain fully why he believed his sister's presence was essential. In short, the court fully considered defendant's request and, after hearing the reasons underlying defendant's request, appropriately rejected it.
 {¶ 18} Defendant nonetheless contends on appeal that because he raised the issue of his innocence in the trial court, stating the incident was an "accident, not intentional[,]" the trial court was required to grant his plea. (Tr. 13.) In the context of the hearing on defendant's motion, however, defendant did not proclaim his innocence of the charges. Rather, he used the allegedly accidental nature of the incident to convince the court that his sister's in-court statement would demonstrate the typed statement to be a product of manipulation. As a result, we are hard pressed to conclude the trial court should have discerned a claim of innocence out of the reason defendant offered for wanting to withdraw his guilty plea, especially when defendant at the time of the plea hearing did not assert he was innocent. Instead, as the trial court concluded, defendant appeared to be urging his sister's statement as a factor to consider in mitigation. Indeed, even at sentencing, defendant explained, "I never meant for my sis to get hurt, and I was not enraged when this all took place. I was probably still under the influence of a weekend of drinking and drugging * * * and was not thinking clear." Id. at 30. Defendant's desire to have his sister's presence for mitigation purposes did not require the trial court to grant defendant's Crim.R. 32.1 motion. *Page 10 
 {¶ 19} Moreover, the trial court could reasonably conclude defendant's claims that he did not intend to hurt his sister did not amount to a claim of innocence in view of the variety of explanations defendant offered for the incident. At one point, defendant claimed his sister asked for the lighter that ultimately ignited the gasoline poured on her. Alternatively, he suggested the whole incident was a bad gag gone wrong: he blamed his sister, contending that her work with solvents as a mechanic induced the fire. Finally, he contended she caught fire while filling a hot lawnmower.
 {¶ 20} Under the circumstances of this case, the trial court could conclude defendant's plea was an admission of guilt. State v.Calloway, Hamilton App. No. 040066, 2004-Ohio-5613. Because the trial court did not abuse its discretion in refusing to grant defendant's motion to withdraw his guilty plea, defendant's single assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 BROWN and KLATT, JJ., concur. *Page 1